*470 OPINION OF THE COURT
Carol Berkman, J.
On October 28, 1993, the defendant, who pleaded guilty to robbery in the second degree in 1986 and was sentenced to IV2 to 4 V2 years on January 29, 1987, was resentenced to a term of 5 to 15 years in State prison consecutive to his sentences for indictment Nos. 8097/86 and 11849/90. This written opinion is filed because the issues presented by the resentence are complex and because the defendant presents extraordinary security risks that inhibited a lengthy courtroom procedure. The question is whether the fact that defendant was placed on interim probation in violation of People v Rodney E. (77 NY2d 672 [1991]) shields him from the other, entirely legal, conditions precedent to the promise of probation. There is no such shield, and based on defendant’s behavior since the original sentencing, he was given a greater sentence than originally imposed.
Defendant pleaded guilty to robbery in the second degree on April 23, 1986. He was promised youthful offender treatment and probation if he proved he should not go to State prison. He was also told that he would have to cooperate with the Manhattan Court Employment Program (MCEP) and J-Cap, a residential drug treatment program. Defendant left J-Cap some months later and thereafter committed a new robbery for which he was arrested and indicted in October 1986. On January 29, 1987, he attempted to plead guilty to the new robbery in return for a negotiated sentence aggregating three to nine years for both cases. Defendant denied that he had used a dangerous instrument, and his new plea was not accepted. He was sentenced to IV2 to 4Vi years on the original case. Youthful offender treatment was denied. Ultimately, defendant did plead guilty to the new robbery and received a consecutive sentence of lVi to 4Vi years.
At some point in the period between April and December 1986, the Department of Probation determined that defendant had been placed on interim supervision. The record does not clearly reveal how this came about. In November, the Department asked that a bench warrant be issued. In December, it filed "Interim Supervision Report #1.” Accordingly, on June 6, 1993, the Appellate Division, First Department, remanded the case for resentencing, citing People v Rodney E. (77 NY2d 672, supra).
In the meantime, defendant had been paroled from State *471 prison in September 1989. He was arrested and indicted for grand larceny in December 1989, and was subsequently indicted for bail jumping in connection with that case. In September 1990, he was arrested and indicted for three robberies. While that case was being tried, he had a violent outburst and injured at least three court officers, resulting in another indictment for assault in the second degree. There have been convictions in connection with all of these indictments, and defendant is serving terms aggregating 20 to 40 years for these various convictions.
LEGAL DISCUSSION
Neither the order of the Appellate Division in this case nor the holding of the Court of Appeals in People v Rodney E. (77 NY2d 672 [1991], supra) requires any more than that defendant be resentenced in accord with his plea bargain and without reference to any illegal conditions. A plea bargain must be read objectively (People v Cataldo, 39 NY2d 578 [1976]), and an objective reading of the bargain in this case is that the court’s promise of probation was contingent upon defendant’s not getting indicted for committing another felony. No rational person could believe that a new crime would prove that he should not go to State prison, no matter how faithful his compliance with the technical requirements of interim supervision. Even had defendant complied with all the conditions of presentence probation (assuming that MCEP and J-Cap were unenforceable conditions of that illegal probation), he still failed to perform the legal condition precedent to probation — proving that he should not go to State prison.
Thus, the conditions precedent are separable, and the legal condition enforceable. This court was therefore free to impose any legal sentence. The minimum prison sentence, appropriate in 1987 when imposed, was inadequate in 1993, based on specific and identifiable facts clearly having nothing to do with judicial vindictiveness for a successful appeal. The maximum sentence is necessary to isolate this menace from society.
Certainly a plea induced by an unfulfilled promise violates due process (People v Selikoff, 35 NY2d 227, 241 [1974]) but conditional sentence promises are permitted in this State so long as the conditions are legal, even where they permit long-term monitoring of the defendant’s behavior. (See, People v Rodney E., supra, at 674-675; People v Outley, 80 NY2d 702 [1992] [no arrest condition]; People v Thompson, 193 AD2d 841 *472 [3d Dept 1993] [drug rehabilitation; six-month adjournment]; People v Ellis, 162 AD2d 701 [2d Dept 1990] [drug rehabilitation and cooperation with Treatment Alternatives to Street Crime (T.A.S.C.) caseworker]; People v Hladky, 158 AD2d 616, 619 [2d Dept 1990] [defendant to remain at St. John’s School for Boys until it was determined he was fit to leave]; People v Dolkart, 60 AD2d 238 [1st Dept 1977] [cooperation in further investigations]; but see, People v Johnson, 197 AD2d 638 [2d Dept 1993] [drug rehabilitation condition the equivalent of requiring interim probation].)
Even before Rodney E. (supra), the law was clear that violation of an illegal condition could not justify enhanced punishment. (E.g., People v Carr, 135 AD2d 722 [2d Dept 1987] [condition that defendant not deny guilt to Probation Department].) And of course the condition must be part of the negotiation and not unilaterally imposed by the court after the plea has been entered. (E.g, People v Spina, 186 AD2d 9 [1st Dept 1992].)
A reading of the record on appeal in Rodney E. (supra) shows that there was only one condition on the judicial promise of probation, that there be no "mess ups” on the defendant’s interim supervision. Within a week after the plea, he signed written conditions of probation, as did his lawyer, the probation officer and the Judge. Rodney E. violated the conditions because, it was alleged, he was consistently tardy at school, then was suspended due to cursing and threatening the school principal, he was not at home when a probation officer made an after-curfew visit, and his family failed to cooperate in efforts to get him into counseling. In sentencing Rodney E., the Judge specified that these violations formed a partial basis for his sentence.
In this case, interim supervision was not made an explicit condition of the sentence promise. No written conditions of probation were prepared or signed. CPL 410.10 (1) provides that the court "must specify * * * conditions” in writing when sentencing a defendant to probation. This is not to argue that defendant was not on interim probation, since the Appellate Division has so found, but to demonstrate that the only conditions of interim probation arguably specified in this record are cooperation with MCEP and J-Cap. To be sure, the commission of a new crime is a violation of probation whether specified as a condition or not (CPL 410.10 [2]). But the fact that defendant was illegally on interim probation does not *473 change the fact that the new crime also signaled definitively defendant’s failure to prove he should not go to State prison.
In short, Rodney E. was given a chance to earn probation by not violating interim probation. Defendant here was given a chance to prove he should not go to State prison and was also at some point placed on some form of interim probation. In Rodney E. (supra), there was one inseparable and illegal condition precedent to granting the plea promise, and that condition could not be considered at sentence. Here, there were separable conditions: the violation of interim probation can be disregarded in assessing whether defendant proved he should not go to State prison.
The fact that the Department of Probation may have been supervising defendant did not in any way hamper him from proving he could lead a law-abiding life, and certainly did not in any way contribute to his new crime. (Cf., People v Boodle, 47 NY2d 398 [1979] [independent act of unlawfulness; police illegality does not require suppression].) In Rodney E. (supra), the Court distinguished between the Court’s power to direct the Probation Department to report on defendant’s behavior and its lack of power to direct the Department to supervise. A report is not rendered invalid simply because supervision was also involved.
The suggestion made in defendant’s brief to the Appellate Division, at page 9, would require the imposition of probation (or vacatur of the plea) whenever a court had ordered interim supervision, no matter how valid the independent conditions, no matter how unnecessary or inappropriate this remedy to correct the statutory illegality of ordering the Department of Probation to supervise a defendant before his sentence. Almost any behavior can potentially be made the subject of a condition of probation. (See, Penal Law § 65.10.) No doubt defendant will argue that his commission of a new crime (never denied although defendant tried to mitigate his culpability) should be treated solely as a violation of the conditions of an illegally imposed interim probation.
The remedy defendant seeks would give him much more than he or any Judge ever bargained for: defendant did not protest the sentence when imposed in 1987; Judge Haft presumably considered that sentence in deciding to promise the minimum legal sentence on a reduced plea under indictment No. 8097/86; and now, when this seven-year-old case is almost certainly untriable, defendant argues he should either get *474 probation or have his plea back. Due process requires that a plea be knowingly and voluntarily entered, and not induced by any unfulfilled promise. Defendant may now regret that he entered such an open-ended plea, but he is entitled as a matter of due process and pursuant to the holding in Rodney E. (supra) to no more than resentence without reference to his response to interim probation.
The only conditions set by this court for the deferral of sentence, i.e., the interim probation, were that defendant cooperate with MCEP and stay in J-Cap. It is not necessary to consider whether these conditions are also separable from the interim probation. It was easy enough to put aside these matters in sentencing defendant on October 28, 1993. The extent to which they played any part in the original sentence is lost in the mists of time. But they certainly played no part in the resentence.
Finally, this court is aware that any increased sentence imposed after a successful appeal is presumptively vindictive under North Carolina v Pearce (395 US 711) and People v Van Pelt (76 NY2d 156). In sentencing defendant in 1987, this court still had hopes for his rehabilitation. Subsequent events —the three new felonies of which he was convicted and for which he was sentenced in 1992, as well as his uncontrollably violent behavior during that trial — demonstrate that defendant is a menace, and should be locked away from society. The imposition of the maximum sentence had nothing to do with vindictiveness and everything to do with the public welfare.
Because the deferral of the sentence in this case was such a spectacular failure and because the Legislature may be considering an extension of CPL 380.30, authorizing interim supervision in certain cases, I express my view that there is a necessity for interim presentence supervision by the Probation Department. To control prison overcrowding and for many social policy reasons, Judges are frequently asked to consider alternatives to incarceration. Often, we are faced with defendants who deserve incarceration, but who are being given one last chance at rehabilitation. These cases require close monitoring and the Department of Probation is often much too slow in reporting violations of probation to the court. Moreover, so long as we are required to determine youthful offender status at sentence, rather than at the close of the probationary period (another desirable legislative change), the scope of sentence available on resentence of a youth so adjudi *475 cated may be disproportionate to his crime and society’s needs.
Prior to Rodney E. (supra), interim supervision by the Department of Probation was a presentencing device much used in New York County (and apparently in Onondaga, where Rodney E. was sentenced). To be sure it provided better information for sentencing. As importantly, I believed intuitively that my active participation improved the odds of successful rehabilitation. Indeed, even this defendant managed to stay in drug treatment for five months. Many others made a real success, received their probation, and have not been heard of in the criminal justice system since. According to a study of a California preconviction supervised probation program reported in the New York Times on June 21, 1991 (Gross, Probation and Therapy Help Some Drug Users, at B6), my intuition was correct:
"The judge’s direct contact with defendants is the main predictor for success, many criminal justice and addiction experts said.
" 'The genius of the operation is the level of judicial involvement,’ Mr. Zimring said. The law professor added that if such programs were widely used in California, they could reduce the state prison population by 5,000 to 10,000 inmates. The population quadrupled in the last decade to 101,000.”