OPINION OF THE COURT
Bellacosa, J.
Defendant’s first trial and conviction resulted in a reversal by the Appellate Division for jury instructional error. The second jury trial resulted again in a conviction and in a higher sentence imposed by a different Justice. The Appellate Division affirmed and a Judge of this court granted leave to appeal. The issue is whether an enhanced sentence, under these circumstances, offends State constitutional due process protections, where the recitation made by the sentencing court on the record does not justify the tougher sentence referable to cognizable reasons occurring subsequent to the first sentencing, sufficient to overcome the presumption of institutional "vindictiveness”. Because the procedure employed does not satisfy State due process requirements, the order of the Appellate Division should be reversed and the case should be remitted for resentencing.
Defendant and his brother were indicted in 1981 for the gunpoint robbery of an employee of a liquor store in Staten Island. The brother pleaded guilty and defendant was convicted, after a jury trial, earning a concurrent sentence as a second felony offender of 5 to 10 years and 4 to 8 years, respectively, for the two robbery counts. Subsequently, the *159 Appellate Division reversed and remanded for a new trial because of the trial court’s failure to instruct the jury correctly concerning the prosecution’s burden of disproving defendant’s alibi beyond a reasonable doubt (see, People v Van Pelt, 119 AD2d 707).
At the retrial before a different Justice, defendant was again convicted on a jury’s verdict of first and second degree robbery. At the sentencing — now challenged on this appeal— the Trial Justice sentenced defendant to concurrent terms of IVi to 15 years and 6 to 12 years, respectively, with the following relevant comments:
"I was unfavorably impressed with the fact that it appeared to me that the defendant’s constant contact with his family concerning this particular case is understandable from a human point of view but I really got the impression that the defendant was, in effect, bullying his sister and his brother-in-law to come in and do the right thing vis-á-vis establishing an alibi for him when I didn’t believe the alibi.
"There is no reason for me to disbelieve the complaining witness. He had nothing to gain one way or another by this case. To make him come in twice and relive the trauma of looking down the barrel of a gun and not knowing whether or not it had a hair trigger or not or whether this defendant had a good aim or a bad aim or whether or not it was even loaded. That was all factored in my consideration of a sentence in this case. ” (Appellant’s apdx, at A41 [emphasis added].)
In North Carolina v Pearce (395 US 711), the Supreme Court formulated a rule designed to neutralize the actuality or perception of judicial vindictiveness in sentencings after a new trial ordered as a result of a defendant’s successful appeal from an earlier conviction. It framed the issue around "the constitutional limitations upon the imposition of a more severe punishment after conviction for the same offense upon retrial” (395 US, supra, at 715-716). The Supreme Court held that a more severe sentence after retrial did not violate due process where the subsequent sentencer acted on "events subsequent to the first trial” (395 US, supra, at 723), provided that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.” (395 US, supra, at 726 [emphasis *160 added].) The holding has been interpreted as creating a rebut-table presumptive invalidity where the same Judge does the subsequent sentencing.
In People v Miller (65 NY2d 502, cert denied 474 US 951), we applied the Pearce rule in a somewhat different procedural setting. Defendant was tried, convicted and resentenced following vacatur of the original 4-to-12-year sentence based on a negotiated plea conviction. Defendant had pleaded guilty to rape, first degree, after an unfavorable suppression ruling. The Appellate Division reversed the suppression court’s ruling (76 AD2d 576), and we affirmed on the People’s appeal (54 NY2d 616). Upon remittal for trial, defendant was convicted of rape, first degree, and a sentence of 7 to 21 years was imposed by a Judge different from the first cycle. The subsequent Judge distinguished the case from Pearce on the ground that defendant Miller’s original conviction was based upon a guilty plea, not upon a trial verdict. Claiming the original sentence was therefore a bargain in exchange for relieving the victim from having to testify at public trial, the Trial Judge did not feel bound to the original sentence. The Appellate Division agreed with the trial court (103 AD2d 808) and, on defendant’s appeal, we affirmed (65 NY2d 502, supra). Our analysis started with the Pearce presumption, even though two different sentencing Judges acted and even though the chances of vindictive motivation (in the institutional, not personal, sense) for the higher sentence was "reduced” in such circumstances. We held that the presumption was overcome, however, because the greater sentence resulted from defendant’s' own choice to forego the quid pro quo of the original plea-bargained sentence. In essence, we held that defendant forfeited the benefit of the deal reflected in the initial sentence by electing to go to trial. "Having accepted the exercise of discretion to lower the original sentence in return for a plea in order to protect the victim, the defendant should not be heard to complain that a higher sentence is imposed after conviction following a retrial at which, by requiring that the victim testify, he has removed from consideration the element of discretion involved.” (People v Miller, 65 NY2d, at 509, cert denied 474 US 951, supra.)
The next phase of this issue was encountered by the Supreme Court in the context of whether to apply its Pearce presumption to a second sentence imposed by a different sentencer (Texas v McCullough, 475 US 134). There, a jury imposed the first sentence and the Trial Judge then set aside the conviction itself. On retrial and reconviction, the court *161 imposed a more severe sentence than the jury had originally fixed. The Supreme Court held that because two different sentencers — a jury and later a Trial Judge — assessed the varying sentences, it could not be said that defendant had received a sentence "increase” (id., at 140). Pearce was therefore held entirely inapplicable.
With that precedential evolution, defendant argues to us on this appeal that, as a matter of State and Federal constitutional law, Pearce’s presumption of vindictiveness applies and undoes his sentence. He asserts that the record does not show any cognizable objective factors occurring subsequent to the first sentencing on which the increased sentence could be justified to overcome the presumption. The prosecution responds that McCullough eradicates the Pearce presumption whenever a different Trial Judge imposes the subsequent sentence. Defendant retorts simply that the existence of two different sentencers is merely a factor to be considered in overcoming the legal fiction of official vindictiveness, but is not enough alone to eliminate or rebut the presumption.
Even if McCullough may be read to eliminate the Pearce presumption as a matter of Federal due process where a different Judge imposes the sentence upon reconviction — a matter we need not decide — we hold that the Due Process Clause of the New York State Constitution requires the application of the presumption in this case and ones like it as a procedural safeguard against punitively toughened sentences (again, we emphasize in the institutional, not personal, sense). The threshold from which that analysis proceeds must be a record articulation of some event becoming known or available only after the first sentence and justifying the more severe sentence. That a different Judge imposes the second sentence is but a factor to be weighed with others in assaying whether the presumption has been overcome.
In this case, the sentencing Judge after the retrial did not cite sufficiently objective or cognizable conduct or events which came to light only after the first sentence which would satisfy our test and thus justify the increased sentence. The witnesses and evidence at the second trial were the same as at the first trial. The Trial Justice’s disbelief of the alibi witnesses, who he perceived were "bullied” by defendant, was not a new fact or an intervening event which would justify the increase. The same witnesses had testified in the same manner at the first trial. In any event, this feature was ambigú *162 ously or indefinitely articulated on the record. Indeed, the only potentially qualifying new fact to which the court alluded when it imposed the enhanced sentence was that defendant had forced the complainant to "come in twice and relive the trauma”. Though this "fact” is akin to the "event” in Miller, i.e., compelling the victim to publicly relive the attack at trial, it is procedurally distinct. In Miller, the original sentence was the product of a bargain struck in exchange for sparing the victim from the trauma of testifying at all. The defendant in Miller gave up that benefit when he challenged the bargained-for plea on appeal and later withdrew his consideration supporting the bargain by proceeding to trial. In the case now before us, defendant made no agreement and offered no consideration in exchange for the lesser initial sentence. He was found guilty after trial, and upon successful appeal proceeded to another jury trial. That of necessity the victim had to testify again under these circumstances cannot be sufficient to overcome the Pearce presumption, because that common fact would swallow the rule itself if given plenary and undistinguished acceptance and application. Finally, defendant did nothing different in this respect compared to the first trial cycle, except that he successfully pursued his appeal rights. The consequence of the victim having to testify a second time cannot be attributed to defendant in this case, as it was in Miller. Here, it happened because of the errors of the trial court in the first case.
We are satisfied that our State due process provision confers a more protective benefit than the Federal counterpart. This State’s long-standing statutory right to appellate review and to appropriate procedures for review of all sentencings, including enhanced ones, point to our special vigilance (CPL 450.10; see, People v Seaberg, 74 NY2d 1, 7; People v Alvarez, 70 NY2d 375, 379; People v De Jesus, 54 NY2d 447, 449). Prior to McCullough (475 US 134, supra), the courts of this State applied Pearce (395 US 711, supra) where the subsequent sentencing Judge was not the original sentencer (see, e.g., People v Miller, 65 NY2d, supra, at 507-510; People v Best, 127 AD2d 671, 672; People v Best, 112 AD2d 942). Sound policy concerns and fundamental fairness fortify the application of the Pearce presumption even where there is a different second sentencer (People v P. J. Video, 68 NY2d 296, 303). First, the instances where this will happen are few. Second, the harm that would result from the withdrawal of the presumption clearly outweighs the burden on the sentencing process under *163 the simple record explication rule. Third, the presumption will always be rebuttable by articulation that the increased sentence was premised on cognizable and temporally relevant data.
To be sure, the State’s interest in preserving the flexibility and discretion of sentencing courts should not be diluted. We believe it will not be by the rule we propose today; rather, the integrity of the process will be strengthened. Contrariwise, significant injustices could result in not protecting against sentence ratchetings motivated by official vindictiveness. Thus, we choose not to relax our procedural vigilance, which guarantees the opportunity for adequate review of sentencings in appellate courts, especially by the intermediate appellate courts.
Our analysis reflects concern, too, born of the threat that tougher sentences upon reconviction after a successful appeal might cause defendants or their counsels to hesitate or forebear from the exercise of the important statutory right to appellate review in this State. Indecision or unwise decisions in such cases may be spurred, whether the same Judge or a different Judge actually imposes the subsequent sentence, since at the time the critical choice is made no one can reasonably know or predict if a different Judge will be on the Bench to impose a subsequent sentence on a retrial and second conviction.
Accordingly, the order, insofar as appealed from, should be reversed and the case remitted to Supreme Court for resentencing in accordance with this opinion.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order, insofar as appealed from, reversed and case remitted to Supreme Court, Richmond County, for further proceedings in accordance with the opinion herein.