*379
 
 OPINION OF THE COURT
 

 Wesley, J.
 

 Defendant was convicted of three counts of rape in the first degree and six counts of sexual abuse in the first degree. Defendant’s appeal challenges the legal sufficiency of the proof supporting the rape convictions and several of the trial court’s evidentiary rulings, including its refusal to admit into evidence the audiotape of a police-initiated call between defendant and his stepdaughter. We conclude that these contentions have merit and that the Appellate Division order sustaining defendant’s convictions should be reversed, the counts of the indictment charging defendant with rape dismissed and a new trial ordered on the remaining counts.
 

 I.
 

 In 1997, defendant John Carroll was indicted for three counts of rape in the first degree and six counts of sexual abuse in the first degree arising from allegations brought against him by his then 13-year-old stepdaughter. Defendant had known the girl since she was approximately 21/2 years old, when he started dating her mother; they were married in 1989. After the birth of another child, they separated in 1993. Although defendant’s relationship with his wife quickly deteriorated and was strained, he maintained contact with the children. His stepdaughter called him on a regular basis and he cared for the children after school.
 

 The allegations against defendant came to light in early March 1997 after the girl told a friend about a dream in which someone named A.J. touched her. The friend spoke to the child’s mother, who confronted her daughter about the dream. During the questioning, the mother mentioned the names of several men and asked whether any of them had ever touched her. Her daughter kept nodding no. Finally, she asked if defendant had ever touched her. She repeated the question after the girl did not answer, and the girl, after shaking her head no, began crying and responded yes. The mother called the police several days later.
 

 On March 10, 1997, mother and daughter met with Troy Police Detective Sergeant Steve Weber. The girl told Detective Weber that defendant had been touching her chest and vaginal area since she was six years old. She also indicated to Weber that she was a virgin. Detective Weber arranged for the girl to be examined by Jane Szary, a nurse practitioner who worked
 
 *380
 
 with the Troy Police Department. The nurse practitioner reported that her findings were consistent with vaginal penetration. Weber told the girl that she was not a virgin.
 

 Eight days later, the girl met with New York State Police Investigator Edmund Girtler. During this interview, the child now revealed that, in addition to the prior allegations of abuse, she had felt “pressure” between her legs and inside her vagina since the age of 10. Girtler then instructed her to telephone defendant for the purpose of eliciting incriminating statements which would be monitored and audiotaped. Confronted by his stepdaughter’s allegations, defendant vehemently denied any inappropriate conduct, despite her continued accusations. The girl also asked defendant if he thought she was lying. He replied “I don’t think you’re making it up, I think that you’ve got different ideas of what may have happened * * * You’ve had a rough life. A lot of things go through your mind.”
 

 Later that day, Weber and Girtler went to defendant’s workplace and asked him to accompany them to the State police barracks for questioning. During the interview, Girtler confronted defendant with a fake polygraph test indicating that the girl had been truthful in her allegations that defendant had raped and sexually abused her. Defendant indicated that the girl “wasn’t lying” and was not “a liar.” After nearly three hours of questioning, defendant’s attorney contacted the police and all questioning ceased. The defendant did not give a written statement and the officers did not videotape or otherwise record the interview.
 

 Prior to trial, County Court granted the People’s motion to exclude the audiotape and prohibited any questions concerning the tape. The court concluded that the tape was hearsay and that the excited utterance exception did not apply.
 

 The only testimony concerning the facts of the three rapes charged in the indictment came from the child. She indicated that each rape occurred in an upstairs apartment at defendant’s workplace. Two occurred in 1993 (spring and July) when the girl was nine and the third occurred in the summer of 1994 when she was 10.
 
 [1]
 
 With respect to each incident, the.girl testified that Carroll “rolled me on my back and got on .top of me, and I felt pressure between my legs and inside my vagina.” She did not remember what she was wearing, if her clothes were on or off, or if defendant had his clothes on or off during
 
 *381
 
 any of the three incidents. When asked if she remembered anything more about the feeling of “pressure,” she answered “no.” She did not recall if it hurt, stating that she “just remember[ed] the feeling.” She indicated that she could not describe the vaginal “pressure” she felt on the first two occasions because she didn’t remember. She also stated she never saw defendant’s penis.
 

 On cross-examination she admitted that at her initial meeting with Weber, she failed to tell the detective about the incidents of vaginal “pressure.” She claimed that, at the time of the first police interview, she “didn’t remember exactly what happened,” and that prior to the second police interview, her memory was refreshed by visits to a “doctor” and a counselor.
 

 She also described several incidents during which defendant would come to her apartment after school and put his hands up her shirt or down her pants to touch her. These events occurred between January 1995 and February 1997 and constituted four of the six claims of sexual abuse.
 

 The two police officers testified about defendant’s interrogation. When Weber was questioned on direct examination if he specifically asked defendant about the child’s allegations against him, he stated that he “asked [defendant] if [the girl] was lying and [defendant] replied that she wasn’t lying.” Weber was also asked if defendant had denied the allegations “in the beginning.” Weber replied, “He never denied that he didn’t do it.” On cross-examination, Weber testified “He never said he didn’t do it, that’s right.” Following Weber’s testimony, defendant sought to introduce the audiotape to impeach Weber’s statements on the ground that Weber falsely and unequivocally stated that defendant
 
 never
 
 denied the allegations. The court denied the application, finding that the only inference to be drawn from Weber’s testimony was that defendant never denied the allegations in the context of the police interrogation.
 

 Although the questioning of defendant lasted nearly three hours according to Girtler, defendant was never confronted with specific allegations made by the girl. When defendant was shown the fake polygraph test, Girtler also asked him if the child was lying, to which defendant responded “no.” Girtler stated that Weber then asked if the girl was a liar, and defendant again said “no.” On cross-examination, Girtler also testified that defendant never denied the allegations against him, stating that “He never said, I didn’t do it.”
 

 
 *382
 
 Ms. Szary, the nurse practitioner, also testified. She indicated that she examined the girl and observed an “old transection in her hymenal band at the 7 o’clock position” which was “curved.” She noted that if an object is pushed through the hymenal opening of a pre-menstrual child, and it was “a sudden, forceful type of entry, a one-time blow type of thing, it could be very, very damaging, [and] could cause significant tearing and bleeding” resulting in permanent scarring that would be visible years after the fact. The nurse was not asked if the child’s condition was consistent with a series of rapes which preceded several incidents of sexual abuse or consistent with the use of some other instrumentality.
 

 Defendant testified and denied all of the accusations against him. One of defendant’s former employees testified that the apartment in which the charged acts occurred was frequently entered by employees unannounced during the day for use as a break room.
 

 The jury convicted defendant of all nine counts in the indictment — three counts of rape in the first degree and six counts of sexual abuse in the first degree. Defendant was sentenced to 121/2 to 25 years for each rape conviction — to run concurrently with each other — and 2 to 4 years for each of the sexual abuse convictions — to run consecutively with each other but concurrently with the sentence imposed for the rape convictions.
 

 The Appellate Division modified the judgment to correct an illegal sentence and, as so modified, affirmed (263 AD2d 768). The Court concluded that defendant’s audiotaped statements were not admissible as an excited utterance and rejected his other evidentiary challenges to the tape’s exclusion as without merit. The Court also held that the convictions were supported by legally sufficient evidence. A Judge of this Court granted defendant leave to appeal, and we now reverse.
 

 II.
 

 We first consider whether the evidence is legally sufficient to sustain the rape convictions. Defendant argues that the evidence was insufficient to establish the required element of penetration. We agree.
 

 The standard for review of legal sufficiency of the evidence in a criminal case is whether “ ‘after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt’ ”
 
 (People v Contes,
 
 60 NY2d 620, 621 [quoting
 
 Jackson v Virginia,
 
 443 US 307, 319]).
 

 
 *383
 
 • Rape in the first degree is defined by statute as engaging in sexual intercourse with a female less than 11 years old
 
 (see,
 
 Penal Law § 130.35 [3]). Sexual intercourse “has its ordinary meaning and occurs upon any penetration, however slight” (Penal Law § 130.00 [1]). Moreover, the testimony of a child victim alone is sufficient because corroboration of sex offenses with respect to child victims is no longer required except in instances not pertinent here
 
 (see, e.g., People v Groff,
 
 71 NY2d 101, 109;
 
 see also,
 
 Penal Law § 130.16 [corroboration rule now limited to those sex offenses for which the victim is deemed incapable of consent because of a mental defect or mental incapacity]).
 
 [2]
 
 Thus, the element of penetration may be established by a child victim’s testimony alone
 
 (see, e.g., People v Hatfield,
 
 256 AD2d 1105, 1106,
 
 lv denied
 
 93 NY2d 853).
 

 In this case, there was no testimony that defendant put his penis inside the girl. She vaguely recalled feeling “pressure between [her] legs and inside [her] vagina.” She never saw defendant’s penis and did not remember any other details about the incidents — what the “pressure” felt like, if it hurt, whether she was clothed or unclothed, or whether defendant was clothed or unclothed. She freely admitted she did not tell Weber about feeling “pressure” when she first described the incidents and that, prior to her second interview in which she did recall the pressure, her memory was refreshed by visits to a “doctor” and a counselor. She also asserted during her first interview that she had never had intercourse, only to be told by Weber after Szary’s examination that she was not a virgin. Indeed, even the trial court acknowledged that the girl “couldn’t tell” whether intercourse had occurred and suggested other explanations or sources of the pressure, for example, “the weight of a male body on top of a child.” Moreover, there was no testimony from the child with respect to any instrumentality of penetration.
 

 The girl’s inability to testify with respect to penetration is not, however, conclusive, if other evidence existed from which that fact could be established
 
 (see, People v Tench,
 
 167 NY 520, 522). The nurse indicated that any sudden, forceful entry would
 
 *384
 
 cause “significant tearing and bleeding,” but the girl could not remember, and no other evidence established, that she was in any pain after these incidents or that she suffered any other adverse physical reactions consistent with forceful, sudden entry. The first charged act was the rape in the spring of 1993; all the charged acts of sexual abuse occurred on subsequent dates. According to the nurse practitioner’s testimony, such a first-time act of forceful penetration would have produced significant tearing and bleeding, no evidence of which existed here. Because the nurse’s testimony was not consistent with the facts and circumstances surrounding the alleged rape, it did not provide any proof of penetration
 
 (see, People v Tench, supra,
 
 at 523). Thus, there was no testimonial or physical evidence establishing penetration.
 

 Nor did defendant’s statements constitute admissions from which a rational trier of fact could have found beyond a reasonable doubt that penetration did occur. Defendant’s statements were not explicit admissions to sexual abuse in general, or penetration in particular
 
 (cf., People v Keefer,
 
 262 AD2d 791,
 
 lv denied
 
 94 NY2d 824;
 
 People v Shepard,
 
 259 AD2d 775,
 
 lv denied
 
 93 NY2d 979;
 
 People v Bates,
 
 233 AD2d 937). Under the circumstances, defendant’s statement, after being confronted with a false polygraph examination he was told was authoritative that the girl was not lying, was far from a specific admission of having raped her. Rather than an “assertion of guilt,” defendant’s statement was more akin to a statement “of one distracted and troubled, of one floundering and confused, probing and seeking the answer to something not known”
 
 (People v Leyra,
 
 1 NY2d 199, 206-207). As such, this statement alone is insufficient to sustain defendant’s rape conviction
 
 (see, id.,
 
 at 208 [equivocal statement considered “in proper perspective” was insufficient to sustain conviction]). Indeed, defendant’s statement that the girl was not lying is even less significant given that no specific allegations were ever revealed to him during the interrogation. Defendant was only told of vague, general allegations made by his stepdaughter.
 

 In sum, the evidence was not sufficient to establish beyond a reasonable doubt the element of penetration
 
 (see, People v Dunn,
 
 204 AD2d 919,
 
 lv denied
 
 84 NY2d 907;
 
 cf., People v Fuller,
 
 50 NY2d 628). The rape convictions cannot be sustained; the three counts of rape charged in the indictment must be dismissed.
 

 
 *385
 
 III.
 

 Defendant also claims that the trial court erred in precluding the police-recorded audiotape of defendant’s conversation with his stepdaughter. Under the circumstances presented here, we agree and hold that in light of the testimony that defendant “never denied” the allegations, the trial court abused its discretion in failing to allow the tape or testimony related to that conversation.
 

 Initially, we reject defendant’s contention that his taped statements were admissible under the excited utterance exception to the hearsay rule. Trial courts are accorded wide discretion in making evidentiary rulings and, absent an abuse of discretion, those rulings should not be disturbed on appeal
 
 (see, People v Aska,
 
 91 NY2d 979, 981). Excited utterances “are the product of the declarant’s exposure to a startling or upsetting event that is sufficiently powerful to render the observer’s normal reflective processes inoperative” preventing the opportunity for deliberation and fabrication
 
 (People v Vasquez,
 
 88 NY2d 561, 574;
 
 see, People v Edwards,
 
 47 NY2d 493, 497). On these facts, we cannot say that the trial court abused its discretion in determining that the audiotape was not an excited utterance.
 

 Defendant’s alternative argument that the taped conversation should have been admitted to refute the prosecution’s claims that defendant never denied the allegations against him has merit.
 

 A court’s discretion in evidentiary rulings is circumscribed by the rules of evidence and the defendant’s constitutional right to present a defense
 
 (see, People v Hudy,
 
 73 NY2d 40, 57,
 
 abrogated on other grounds by Carmell v Texas,
 
 529 US 513;
 
 see also, Chambers v Mississippi,
 
 410 US 284, 294 [“The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State’s accusations”]).
 

 At trial, both Weber and Girtler testified that defendant never denied the allegations against him. The People argue that the officers’ testimony established only that defendant never denied the allegations during the police interrogation. However, Weber and Girtler both testified that defendant
 
 never
 
 denied the allegations. Moreover, defendant’s alleged “failure-to-deny” became a major theme in the prosecution’s theory of the case. The prosecutor’s summation demonstrates just how important that theory was.
 

 
 *386
 
 In her summation, the prosecutor stated that “he didn’t outright deny. He never said, you know something, I never touched that child. * * * He’s a salesman. That’s what they do. That’s his job, to sell a product. He was making a pitch in here. And he sat there and he faced you. And, my God, members of the jury, it was like he was giving a lecture. * * * Members of the jury, he had nine months to think about that. He had all week to think about his story. He’s a man who sells things for a living.” The prosecutor relied on and accentuated the perception that defendant never asserted his innocence prior to trial and defendant was never permitted to explain the context of his alleged admissions.
 

 Given the officers’ testimony that defendant never denied the allegations against him and the exclusion of the taped conversation, the jury was left with the distorted impression that defendant never, at any time, denied the allegations against him. The jury had no way of knowing that there was another point in time at which defendant had the opportunity to deny — and did deny — the allegations. Just as the People are allowed to rebut key assertions of the defense
 
 (see, People v Blakeney,
 
 88 NY2d 1011), the defendant also is allowed to attempt to disprove the People’s theory and rebut their key assertions
 
 (see, People v Hudy, supra,
 
 73 NY2d, at 57-58;
 
 see also, People v Aska, supra,
 
 91 NY2d, at 983 [Titone, J., dissenting]).
 

 The proposed evidence was not merely relevant to the officers’ credibility and was not simply a collateral matter
 
 (see, People v Alvino,
 
 71 NY2d 233, 247). The rule prohibiting the use of extrinsic evidence to impeach a witness on a matter that is merely collateral “has no application where the issue to which the evidence relates is material in the sense that it is relevant to the very issues that the jury must decide”
 
 (People v Knight,
 
 80 NY2d 845, 847). Such was the case here.
 

 Defendant sought to introduce the tape not only to impeach the officers’ credibility, but also to rebut the prosecution’s stance — pressed vigorously — that he never denied the allegations made against him and that he admitted his guilt. The inference that the People wanted the jury to draw from their witnesses was that by never denying the allegations, and by stating that his stepdaughter was not lying upon being confronted by the police, defendant was unmistakably admitting his guilt. This issue was at the heart of the People’s case.
 

 Given this setting, the fact that the court offered to give defendant a limited opportunity to explore whether or not he was
 
 *387
 
 specifically asked during the police interrogation if he denied the allegations did not cure the error in the court’s evidentiary ruling. Defendant was not permitted to elicit any testimony regarding his
 
 prior
 
 denials. Thus, the trial court’s decision under the circumstances was an abuse of discretion and “resulted in a trial that was decidedly skewed in the People’s favor”
 
 (People v Hudy, supra,
 
 73 NY2d, at 58).
 

 IV.
 

 In light of the need for a new trial on the remaining charges of the indictment, we also reach defendant’s other contentions concerning the use of expert testimony to explain Child Sexual Abuse Accommodation Syndrome (CSAAS). We have long held that expert testimony regarding rape trauma syndrome, abused child syndrome or similar conditions may be admitted to explain behavior of a victim that might appear unusual or that jurors may not be expected to understand (see,
 
 People v Taylor,
 
 75 NY2d 277). In
 
 People v Keindl
 
 (68 NY2d 410, 422,
 
 rearg denied
 
 69 NY2d 823), expert testimony was permitted to “rebut defendant’s attempt to impair the credibility of [sexually abused children] by evidence that they had not promptly complained” of the abuse
 
 (People v Taylor, supra,
 
 75 NY2d, at 288). Here, the People properly offered Dr. Hamill’s testimony for the purpose of instructing the jury about possible reasons why a child might not immediately report incidents of sexual abuse.
 

 Moreover, Dr. Hamill’s testimony did not attempt to impermissibly prove that the charged crimes occurred
 
 (see, id.,
 
 at 293). Although Dr. Hamill testified about CSAAS, he referred to it only generally insofar as it provides an understanding of why children may delay in reporting sexual abuse. Dr. Hamill never opined that defendant committed the crimes, that defendant’s stepdaughter was sexually abused, or even that her specific actions and behavior were consistent with such abuse
 
 (cf., People v Mercado,
 
 188 AD2d 941, 942 [expert permissibly testified to explain the victims’ failure to promptly report, but impermissibly testified as to the manifestations of abuse that the children exhibited]). In fact, Dr. Hamill had not interviewed either defendant or his stepdaughter and was not aware of the facts of this case.
 
 [3]
 

 Defendant’s remaining contentions either lack merit or are unpreserved.
 

 
 *388
 
 Accordingly, the order of the Appellate Division should be reversed, the counts of the indictment charging defendant with rape in the first degree dismissed and, as to those counts of the indictment charging defendant with sexual abuse in the first degree, a new trial ordered.
 

 Chief Judge Kaye and Judges Smith, Ciparick and Rosenblatt concur; Judge Levine taking no part.
 

 Order reversed, etc.
 

 [2]
 

 . Rules of corroboration that exist for other reasons may, however, be required in certain sex offense prosecutions. For example, a child under 12 years of age must understand the nature of an oath before being permitted to testify under oath in the prosecution of any crime (see, CPL 60.20 [2]). If a child does not understand the oath, unsworn testimony may be given, but a defendant may not be convicted of any offense solely upon such evidence (CPL 60.20 [3]; see
 
 also, People v Groff,
 
 71 NY2d, at 109-110,
 
 supra).
 

 [3]
 

 . Defendant’s related argument that CSAAS has no reliable scientific basis is not preserved.