■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN F. CARROLL, Appellant. [753 NYS2d 148] —Spain, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered January 24, 2001, upon a verdict convicting defendant of six counts of the crime of sexual abuse in the first degree.

Following a retrial, defendant was convicted by a jury of six counts of sexual abuse in the first degree for his conduct on specified occasions between July 1993 and February 27, 1997 in subjecting his stepdaughter—born in August 1983—to sexual contact, either by forcible compulsion or when the victim was less than 11 years old (*see* Penal Law § 130.65 [1], [3]). Defendant was sentenced to consecutive terms of imprisonment totaling 12 to 30 years which, by operation of law, were reduced to 10 to 20 years (*see* Penal Law § 70.30 [1] [e] [i]). Defendant now appeals, and we affirm.

The counts of sexual abuse of which defendant was convicted at this second trial stem from an indictment handed up in 1997 which also charged defendant with three counts of rape in the first degree (*see* Penal Law § 130.35 [3]). On his initial appeal from his conviction on all counts following the first jury trial, the Court of Appeals reversed, concluding that the evidence presented was not legally sufficient to establish beyond a reasonable doubt the element of penetration required to sustain the rape convictions (95 NY2d 375, 382-384; *see* Penal Law § 130.00 [1]; § 130.35 [3]). In addition to dismissing the rape counts, the Court awarded defendant a new trial on the six counts of sexual abuse determining that the trial court had erred in precluding a police-recorded audiotape of defendant's conversation with the victim on March 18, 1997; while agreeing that the audiotape was inadmissible hearsay, the Court concluded that defendant should have been permitted to introduce the audiotape at trial to refute testimonial claims of prosecution witnesses that defendant had never denied the victim's allegations against him (95 NY2d 375, 385-387, *supra*).

The testimony at the second trial again established that de-

fendant has known and served in a parental role to the victim since 1985, when she was approximately 2½ years old, after he began dating and soon thereafter moved in with her mother whom he later married in 1989. Defendant and the mother separated in 1993, although defendant thereafter maintained regular contact with the victim. The victim testified to the details of all six counts of sexual abuse. She recounted two incidents which occurred when she was nine years old (in July 1993) and then 10 years old (in the summer of 1994), both after defendant and her mother had separated, in which she went to defendant's apartment located upstairs at his workplace in the Town of North Greenbush, Rensselaer County, after a day at summer camp; on each occasion, defendant kissed her breasts, disregarding her directives that he stop and, thereafter, defendant went into the bathroom and closed the door (*see* Penal Law § 130.65 [3] [counts 2 and 4]). She also testified to four separate incidents which occurred after school while she and defendant were alone in the apartment where she lived with her mother and sister in the City of Troy, Rensselaer County. Specifically, she testified that in January 1995, and again the first week of February 1997, defendant touched her breast and then put his hand down her pants, touching her vagina, each time pushing her up against a couch and using his greater strength to overcome her efforts to stop him (Penal Law § 130.65 [1] [counts 6 and 8]). She further testified to two other similar incidents in January 1996 and on February 27, 1997 in which defendant touched her breasts, using force (*see* Penal Law § 130.65 [1] [counts 7 and 9]).

The victim testified that sometime after the last incident of sexual abuse, she told a friend a story that she had a dream that a particular person had touched her, knowing the friend would tell the victim's mother and wanting her mother to know about and stop defendant's abuse of her. After eventually admitting to her mother that defendant was the person who had touched her, the victim met with Troy Police Detective Sergeant Steven Weber on March 10, 1997 and told him about the abuse. The then 13-year-old victim was examined by a nurse practitioner who testified that her examination revealed a hymenal tear consistent with sexual abuse or forceful digital penetration. The victim thereafter met with Investigator Edward Girtler of the State Police, repeating her accusations and later providing a written statement. At their second meeting on March 18, 1997, the victim agreed to make a controlled phone call to defendant in which she confronted him and attempted to elicit defendant's admissions to the accusations. The tape recording of that call was played for the jury in which,

inter alia, defendant repeatedly denied ever touching her in a sexual manner. Later that day, defendant voluntarily came to the State Police barracks and spoke with Girtler and Weber, who testified that defendant admitted rubbing the victim's shoulders and stomach area and having told the victim that they had a "special relationship" which no one would understand and not to tell anyone about it. When asked, defendant said the victim was not lying but attributed her accusations to other troubles. In response to the accusations, defendant never stated during the interview that he did not do what the victim reported, but instead repeatedly made statements like, "I can't believe [she] is saying this," shaking his head in disbelief. Defendant testified, denying the accusations of sexual abuse.

Defendant's initial contention on appeal—that he was convicted based upon evidence of uncharged crimes—is without merit. Significantly, prior to trial, County Court properly precluded the People from introducing any testimony or evidence at trial regarding either uncharged or previously charged rapes or sexual intercourse, or attributing the victim's hymenal tear to *penile* penetration, based upon defendant's acquittal of the three rape charges and the unduly prejudicial impact of such evidence. Contrary to defendant's appellate contentions, the court faithfully adhered to that ruling, and no such rape evidence was introduced at this trial.

To the extent that defendant claims that the nurse's testimony regarding digital penetration consisted of uncharged crime evidence because he was "not charged with penetration," we reject it. Defendant was charged with sexual abuse in the first degree, requiring proof that he subjected the victim to "sexual contact" (Penal Law § 130.65), which means "*any touching* of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00 [3] [emphasis added]). County Court correctly held that the nurse's testimony that there were hymenal tears which could have been caused by digital penetration constituted proof of the crime *charged* in the indictment, i.e., sexual contact under Penal Law § 130.00 (3) and § 130.65 (*see People v Dunavin*, 173 AD2d 1032, 1034, *lv denied* 78 NY2d 965; *see also People v Thomas*, 267 AD2d 949, *lv denied* 95 NY2d 805; *Matter of Nassau County Dept. of Social Servs. v Steven K.*, 176 AD2d 326, 329; *People v Crandall*, 53 AD2d 956, *affd* 45 NY2d 851). The nurse's testimony did not rise to the level of establishing the uncharged crime of aggravated sexual abuse in the second degree, which requires proof of "physical injury" (Penal Law § 130.67), i.e., "impair-

ment of physical condition or substantial pain" (Penal Law § 10.00 [9]; *see Matter of Nichole L.*, 213 AD2d 750, 753, *lv denied* 86 NY2d 701; *see also People v Johnston*, 273 AD2d 514, 519, *lv denied* 95 NY2d 935). Also, the fact that the victim did not testify that she was digitally penetrated did not preclude the People's reliance on medical testimony that her hymenal tear was consistent with digital penetration.

Next, defendant argues that County Court erred in admitting expert testimony concerning child sexual abuse accommodation syndrome (hereinafter CSAAS), which defendant contends was unnecessary, improper and rendered by an unqualified witness. The admissibility of expert testimony regarding psychological syndromes such as rape trauma, child abuse and similar conditions has been upheld "to explain behavior of a victim that might appear unusual or that jurors may not be expected to understand" (*People v Carroll*, 95 NY2d 375, 387, *supra*; *see People v Taylor*, 75 NY2d 277; *Matter of Nicole V.*, 71 NY2d 112, 120-121; *People v Keindl*, 68 NY2d 410, 422; *see also People v Brown*, 97 NY2d 500; *People v Lee*, 96 NY2d 157, 162). Here, after the victim had testified, County Court properly permitted the People to admit testimony concerning CSAAS to offer explanations to the jury which might explain why the victim delayed reporting the abuse, i.e., to rebut the defense's extended attempts on cross-examination to impair the victim's credibility by evidence that she had not promptly complained of the abuse, that she had continued to maintain a close relationship and to initiate contact with defendant, and that she had initially denied the abuse (*see People v Keindl*, *supra* at 422; *see also People v Carroll*, 95 NY2d 375, 387, *supra*; *People v Taylor*, *supra* at 288; *People v Bennett*, 169 AD2d 369, 374, *affd* 79 NY2d 464; *People v Whitehead*, 142 AD2d 745, 746). At no point did the expert—who never examined or met the victim or defendant—attempt to prove or opine that the abuse alleged here had occurred or that the victim's particular actions, behavior or testimony were consistent with or characteristic of such abuse; nor did the expert attempt to bolster the victim's testimony or to testify that defendant's specific actions or behavior were that of an abuser. The expert's testimony was at all times general and theoretical in nature and not directly linked to the specific facts or testimony of this case (*see People v Brown*, *supra* at 506; *People v Carroll*, 95 NY2d 375, 387, *supra*; *People v Miles*, 294 AD2d 930, *lv denied* 98 NY2d 678; *cf. People v Banks*, 75 NY2d 277; *People v Seaman*, 239 AD2d 681, 682, *appeal dismissed* 91 NY2d 954).

Additionally, County Court did not permit the expert to

discuss her own clinical experience with children who have been abused, limiting her to what the literature reflected regarding CSAAS. Contrary to defendant's claims, the court expressly considered the facts and testimony of this case individually and did not imply any per se rule of admissibility (*see People v Brown, supra* at 505; *People v Lee, supra* at 162-163). We defer to the trial court's firsthand conclusion that voir dire of the jurors did not reflect their uniform awareness and understanding of CSAAS, i.e., the possible reasons for delayed disclosure and other behavior exhibited by victims of ongoing abuse (*see People v Johnston*, 273 AD2d 514, 518, *supra*), and we perceive no error in the court's conclusion that the expert testimony "would aid a lay jury in reaching a verdict" (*People v Taylor*, 75 NY2d 277, 288, *supra*; *see People v Cronin*, 60 NY2d 430, 433).

We are also unpersuaded by defendant's claims that the People's witness was insufficiently qualified to testify regarding CSAAS. The record reflects that this witness—who testified regarding rape trauma syndrome in *People v Taylor* (142 AD2d 410, 414-415, *affd* 75 NY2d 277, 283, 292-293)—holds a PhD in psychology and teaches various psychology courses to undergraduate college students; she has a consultation practice in which she has treated and counseled over 750 sexually abused children, including cases involving CSAAS, and has evaluated and overseen treatment of many more. She received specialized training in the area of child sexual abuse and CSAAS and, in her consultation practice, is also engaged extensively in training and education on this subject. Moreover, she has been qualified to testify as an expert witness approximately 225 to 250 times, including regarding CSAAS. In our view, defendant has not demonstrated that this witness lacked the necessary training, education, knowledge or experience to testify regarding CSAAS (*see Matott v Ward*, 48 NY2d 455, 459; *cf. People v Burt*, 270 AD2d 516, 517-518). Thus, finding no abuse of discretion, serious mistake or error of law, we discern no basis upon which to disturb County Court's determination of the admissibility and scope of this expert testimony, the parameters of which were not exceeded at trial (*see People v Brown*, 97 NY2d 500, 505, *supra*; *People v Lee*, 96 NY2d 157, 162, *supra*; *People v Cronin, supra* at 433).

Defendant's contentions that portions of Girtler's and Weber's trial testimony conveying their interpretations of defendant's body language during their initial interview with him constituted inadmissible opinion testimony by lay witnesses are unpreserved, as the defense did not raise an objec-

tion to them at trial (*see* CPL 470.05 [2]; *People v Van Guilder*, 282 AD2d 773, *lv denied* 96 NY2d 836). At trial, defendant's sole objection to their direct testimony in this regard was sustained, and the remaining testimony was purposefully and knowingly elicited during impeachment efforts on cross-examination as part of the defense theory that the officers had prejudged defendant's guilt and failed to note any of the body language observations, to which they testified, in their interview notes.

Addressing it in the interest of justice, we find that the testimony elicited on direct examination was minimal and concerned the officers' interpretation of defendant's body language as it related to defendant's desire to talk openly, rather than to his guilt of the conduct alleged. Moreover, it was the defense which deliberately framed the question that elicited the opinion from Girtler on cross-examination that defendant's body language was an indication to him that defendant had committed the crimes of which he was accused. While the officers' testimony interpreting and drawing inferences from defendant's body language would likely have been determined to be inadmissible opinion testimony (*see People v Hackett*, 228 AD2d 377, 378, *lv denied* 88 NY2d 986), having elicited it to impeach the witnesses and bolster the defense theory, defendant cannot now claim prejudice (*see People v Casellas*, 227 AD2d 343, 346, *lv denied* 88 NY2d 981; *People v Critzer*, 97 AD2d 878, 879).

Finally, defendant contends that the sentence imposed after the retrial was vindictive and excessive and must be reduced, apparently on the premise that the minimum aggregate sentence imposed following the retrial on fewer and less serious felony counts exceeded the minimum aggregate sentence imposed after the first trial. We disagree for several reasons. After the first trial, County Court (Sise, J.) sentenced defendant to concurrent terms of 12½ to 25 years on the three rape in the first degree convictions, to be served concurrently to consecutive 2- to 4-year terms on each of the six first degree sexual abuse convictions (i.e., a maximum of 12½ to 25 years on the rape counts, concurrent to an aggregate of 12 to 24 years on the sexual abuse counts). On appeal, this Court was required to reduce the minimum portion of the sentences on six of the counts (i.e., the three rape counts and three sexual abuse counts involving crimes predating October 1, 1995) to no greater than one third of the maximum sentence imposed (263 AD2d 768, 770-771, *revd* 95 NY2d 375; *see* Penal Law former § 70.02 [4] [before the Oct. 1, 1995 amendments]), i.e., to reduce

the sentences for each rape count to 8⅓ to 25 years and the sentences for the first three sexual abuse counts to 1⅓ to 4 years, resulting in the reduced maximum aggregate sentence of 10 to 24 years[1] on the sexual abuse counts. Following the Court of Appeals' reversal and acquittal of the rape counts, defendant was again convicted of all six counts of sexual abuse in the first degree. For the three convictions predating October 1, 1995, County Court sentenced defendant to indeterminate terms of 2 to 6 years on each count, and for the three convictions involving crimes after that date (but before September 1, 1998), defendant received indeterminate terms of 2 to 4 years on each count (*see* Penal Law § 70.02 [4]), the sentences on all six counts to run consecutively. The aggregate maximum sentence imposed of 12 to 30 years reduced, by operation of law, to 10 to 20 years (*see* Penal Law § 70.30 [1] [e] [i]).

Defendant's claim of vindictiveness does not withstand analysis. First, the sentence upon retrial was imposed by a different judge, which is fatal to any federal due process challenges (*see Texas v McCullough*, 475 US 134, 140; *People v Young*, 94 NY2d 171, 178; *People v Van Pelt*, 76 NY2d 156, 160-161; *cf. North Carolina v Pearce*, 395 US 711). Further, the more protective state constitutional safeguards were satisfied at defendant's sentencing after retrial by County Court's "record articulation of some event becoming known or available only after the first sentence and justifying the more severe sentence" (*People v Van Pelt, supra* at 161; *see People v Young, supra* at 180), namely, defendant's plea to grand larceny in the fourth degree.[2] In our view, this fact was relevant and provides justification for the increased sentence, overcoming any presumption of vindictiveness (*cf. People v Van Pelt, supra* at 161-163). Second and significantly, the aggregate sentence imposed and intended by the first sentencing judge was 12 to 24 years for the sexual abuse counts and, thus, the aggregate sentence imposed upon retrial of 12 to 30 years involved the same minimum aggregate sentence of 12 years. On the first appeal, this Court only reduced the minimum sentences on

1. Three counts of sexual abuse at the reduced consecutive sentence of 1⅓ to 4 years equals 4 to 12 years, plus the three counts remaining at 2 to 4 years, consecutive, equals 6 to 12 years, totaling 10 to 24 years.

2. Neither the fact that the grand larceny conviction (rendered Sept. 14, 1998, after the first sentence was imposed and the judgment entered) was the result of defendant's plea, nor the fact that the sentence on the plea was apparently made concurrent to the original sentences on which defendant was then imprisoned nor defendant's other expectations in that regard renders County Court's consideration of the grand larceny conviction at defendant's sentencing on retrial either irrelevant or vindictive.

three of the sexual abuse counts because they exceeded the one third that the maximum permitted for crimes predating October 1, 1995; upon retrial, the two-year minimum was again imposed on those three counts (involving crimes predating October 1, 1995), which was properly achieved by increasing the maximum to six years. The other three counts for crimes committed after October 1, 1995 received the same 2- to 4-year sentence imposed after the first trial (*see* Penal Law § 70.02 [4] [after Oct. 1, 1995, before Sept. 1, 1998 amendment, allowing a minimum indeterminate sentence to be one half the maximum]). To the extent that the maximum aggregate sentence imposed upon retrial was longer than that originally imposed on the sexual abuse counts (30 years versus 24 years), we note that the second sentencing judge recognized that the aggregate sentence would be reduced to 10 to 20 years under Penal Law § 70.30 (1) (e) (i). Further undermining any suggestion of vindictiveness following this trial, County Court imposed sentences on each count which were less than the maximum authorized and, on the record before us, we discern no extraordinary circumstances or abuse of discretion warranting reducing the sentences in the interest of justice (*see People v Dolphy*, 257 AD2d 681, 685, *lv denied* 93 NY2d 872).

Defendant's remaining contentions have been examined and are either unpreserved or lacking in merit.

Cardona, P.J., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.

