■ In the Matter of ARNALDO R., a Person Alleged to be a Juvenile Delinquent, Appellant. [807 NYS2d 327]—

---

Order of disposition, Family Court, Bronx County (Harold J. Lynch, J.), entered on or about June 21, 2004, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that he committed acts which, if committed by an adult, would constitute the crime of sexual abuse in the first degree, and placed him on probation for a period of 15 months, reversed, on the facts, without costs, and the petition dismissed.

Virtually the only evidence offered at the fact-finding hearing in support of the allegations of the petition came from the then seven-year-old witness, Jamie R., who testified that the acts alleged occurred in June 2003 as she was watching television in a bedroom of the two-bedroom apartment in which she was residing at the time. Jamie R., along with her parents, her sister Felicity and her brother Jacob, lived in the apartment with the siblings' godfather, Jose R. Jose R. babysat the children on occasions, such as the date of the incident giving rise to this appeal, when the children's parents were working. Additionally, Jose R.'s mother and appellant (the nephew of Jose R. and the grandson of Jose R.'s mother) resided in the apartment. Jose R.'s mother had been granted custody of appellant when he was an infant.

According to Jamie, she was watching a DVD with her sister in the smaller bedroom of Jose R.; Jose R., appellant, and Jacob also were present in the apartment. When Felicity left the room, appellant came in, closed the door, sat down on the bed and pulled his zipper down. Thereafter, appellant "did fresh" to her. As Jamie described it, appellant penetrated her vaginally and anally with his penis after threatening to hit her. Although both acts caused her a "lot" of pain, Jamie did not cry out. She stayed and watched the movie after appellant got off her and left the room. Because appellant was in the apartment when her mother came home, she did not tell her mother what had occurred until the next day.

Whether Jamie possessed sufficient capacity to understand and appreciate the nature of an oath (CPL 60.20 [2]) is a close question. In any event, her account of appellant's conduct was at best confusing. Given her inability to account for how the acts of penetration could have occurred despite the articles of clothing she was wearing, it is difficult to understand Family Court's conclusion that appellant committed an act or acts that would constitute the crime of sexual abuse in the first degree

under Penal Law § 130.65. Of course, Family Court undoubtedly took Jamie's age into account in considering her failure to account for the articles of clothing she was wearing. To the extent the court understandably did so, however, that would heighten our concern about Jamie's capacity to understand and appreciate the nature of an oath. Moreover, Jamie did not describe any conduct by appellant, other than the alleged acts of penetration, that would support the court's finding that he committed an act or acts that would constitute first-degree sexual abuse (cf. People v Scarborough, 49 NY2d 364, 373-374 [1980]).

Not surprisingly, given both Jamie's testimony that she did not see any blood and the total absence of any corroboration in the medical records of her account, Family Court dismissed the counts of the petition alleging acts that would constitute the crimes of first-degree rape and sodomy. Regardless of whether the evidence was legally sufficient to support the sexual abuse finding, appellant correctly argues that the medical records undermined the presentment agency's case (see Matter of Fatima M., 16 AD3d 263, 272 [2005] [absence of physical findings in medical records consistent with sexual abuse raises questions as to the veracity of child's allegations of penetration and bleeding]).

We need not reach the issue of whether the evidence was legally sufficient, since we find that the fact-finding determination is against the weight of the evidence (CPL 470.15 [5]). In addition to these infirmities in the presentment agency's case, Jose R. testified that he was in the apartment continuously from the time he began playing the DVD for Jamie and Felicity to the time appellant left to play basketball. Although Jose R., as appellant's uncle, had a motive to falsify, he gave a straightforward account that he knew the bedroom door was open at all times because he could hear the DVD clearly, that he asked appellant to check on Jamie and come right out to assist with Jacob, who was waking up, and that appellant did so and then went out to play basketball for two hours. Although Jose R. acknowledged that he could not see into the bedroom from the kitchen, his account was not contradicted or impeached and none of his exculpatory testimony is either implausible or tendentious. For all these reasons, the fact-finding order is reversed as against the weight of the evidence, the dispositional order is vacated and the petition is dismissed. Concur—Ellerin, Catterson and McGuire, JJ.

Buckley, P.J., and Mazzarelli, J., dissent in a memorandum by Buckley, P.J., as follows: I would affirm Family Court's fact-finding determination that appellant committed acts which, if

committed by an adult, would constitute the crime of sexual abuse in the first degree.

Prior to testifying, the seven-year-old victim was questioned to ascertain her competence to understand the difference between truth and falsity and the nature of an oath (*see People v Cordero,* 257 AD2d 372 [1999], *lv denied* 93 NY2d 968 [1999]). Her responses indicated that she knew the difference between lying and telling the truth, that telling the truth is a "good thing" and lying is a "bad thing," and that if she lied or broke a promise to tell the truth she could be punished by God, the court, and her parents. Family Court had the "unique opportunity . . . to observe the witness's maturity and demeanor," and the decision to allow her to give sworn testimony was not "clearly erroneous" (*see id.* at 374).

Although the victim had some difficulty at the fact-finding hearing describing what exactly appellant did with her clothes during the incident, Family Court, which saw and heard the witness, could have found that the inconsistencies in her testimony were the result of her age and the embarrassing nature of the encounter (*see People v Lanfair,* 18 AD3d 1032, 1033 [2005], *lv denied* 5 NY3d 790 [2005]). The victim's testimony was sufficiently clear and consistent as to where, and with what, appellant made sexual contact with her to support a finding of sexual abuse in the first degree. The testimony of a child victim alone is sufficient to establish sexual abuse (*see People v Carroll,* 95 NY2d 375, 383 [2000]). The absence of corroborating medical evidence will not negate a finding of sexual abuse, or even of rape, which is completed upon the slightest penetration, based upon the credible testimony of a child victim (*see id.; Matter of Dora F.,* 239 AD2d 228, 230 [1997], *lv denied* 92 NY2d 805 [1998]; *People v Collins,* 166 AD2d 270 [1990], *lv denied* 76 NY2d 1020 [1990]).

A contrary determination is not compelled by *Matter of Fatima M.* (16 AD3d 263, 272 [2005]), relied on by the majority. In *Fatima M.*, a new fact-finding hearing was ordered on the grounds of due process and fundamental fairness, in that the respondent father was precluded from presenting an expert to contradict the experts of the petitioner and the Law Guardian, which severely curtailed the father's ability to present a defense. In any event, the hospital records in Fatima M. did not support the victim's account of penetration resulting in "extensive bleeding," but in the instant matter, the victim never asserted there was any bleeding or physical damage, and thus the lack of medical evidence is not at odds with the allegations.

While Jose R., appellant's uncle, testified that appellant was

in the bedroom with the victim for only moments and that the door to the room remained open at all times, he had a motive to lie and he conceded that he could not see into the room, which presented issues for Family Court, as factfinder, to resolve.