■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRESE HILLIARD, Appellant. [853 NYS2d 198]—

Spain, J.

Defendant stands convicted following a jury trial, for a second time, of felony murder, first degree robbery (three counts), weapons-related crimes and conspiracy (to commit robbery) in the fourth degree. Previously, on defendant's appeal following his first trial, this Court reversed defendant's convictions and remitted for a retrial due to the admission into evidence of defendant's statements taken in violation of his right to counsel (20 AD3d 674 [2005], *lv denied* 5 NY3d 853 [2005]).

At defendant's retrial, it was again established that he was the ringleader in a plan with three acquaintances to rob Arthur Hayes during a staged drug buy in the hamlet of Mountaindale in the Town of Fallsburg, Sullivan County. The evidence again showed that pursuant to the conspiracy, defendant drove with the victim to the location of the purported drug sale under the ruse of facilitating the victim's purchase of a large quantity of marihuana from local drug dealers. As planned, when coconspirators Sheldon Wells and Quinton Lawrence arrived, Lawrence pretended to beat up defendant while Wells—to whom defendant had given a loaded gun earlier that day—forced the victim out of the car, forcibly stole his cash, and then suddenly shot him in the back, killing him. Robert Dawson was waiting in a getaway car and drove Wells and Lawrence away. Defendant "fled" to the home of his friend Christopher Beatty (who had arranged for defendant to assist the victim with his drug purchase but was unaware of defendant's nefarious intentions) and falsely reported to Beatty that they had been robbed by unknown assailants. Lawrence and Dawson pleaded guilty to robbery charges (Lawrence also pleaded to conspiracy) and testified at defendant's trial as part of negotiated pleas. Wells pleaded guilty to felony murder (*People v Wells*, 18 AD3d 1022 [2005], *lv denied* 5 NY3d 796 [2005]), but did not testify. Defendant was sentenced to an aggregate prison term of 25 years to life for the felony murder, robbery in the first degree (three counts) and criminal use of a firearm in the first degree convictions, a consecutive prison term of 15 years for the criminal possession of a weapon in the second degree conviction (which had been concur-

rent after the first trial), and a consecutive prison term of 1¹/₃ to 4 years for the conspiracy in the fourth degree conviction. Defendant now appeals.

While defendant challenges the legal sufficiency of the evidence supporting all of his convictions, the conspiracy count was the only one to which specific deficiencies in the evidence were raised in defendant's motion to dismiss so as to preserve those contentions for appellate review (*see People v Balram*, 47 AD3d 1014, 1015 [2008]; *People v Carter*, 40 AD3d 1310, 1311 [2007], *lv denied* 9 NY3d 873 [2007]; *People v Riddick*, 34 AD3d 923, 924 [2006], *lv denied* 9 NY3d 868 [2007]). Defendant's general motion to dismiss as to the other counts did not preserve for our review the challenges now raised to the sufficiency of the proof with respect to particular elements of those crimes (*see People v Finger*, 95 NY2d 894, 895 [2000]; *People v Gray*, 86 NY2d 10, 19 [1995]; *People v Balram*, 47 AD3d at 1015; *People v Carter*, 40 AD3d at 1311). As to the unpreserved claims, we decline to exercise our interest of justice jurisdiction (*see* CPL 470.15 [3] [c]; [6] [a]).[1]

With regard to defendant's challenge to the evidence supporting his conviction for conspiracy in the fourth degree, we find that the People proved that defendant, Wells and Dawson, acting in concert, agreed to commit robbery in the first degree, a class B felony, and that defendant intended that conduct constituting the object of the conspiracy—the robbery—be performed (*see People v Hafeez*, 100 NY2d 253, 259 [2003]; *see also* Penal Law § 105.10 [1]). Defendant's conduct in obtaining a gun and giving it to Wells and in driving with the victim to the scene constituted overt acts in furtherance of the conspiracy (*see People v Faccio*, 33 AD3d 1041, 1043 [2006], *lv denied* 8 NY3d 845 [2007]; *see also* Penal Law § 105.20).

Contrary to defendant's contentions, while the factual recitation in the conspiracy count of the indictment named the intended robbery victim (Hayes), the People were not required to prove that all of the coconspirators knew the intended victim's identity,[2] which is not an element of the conspiracy count (*see People v Treuber*, 64 NY2d 817, 818 [1985]; *People v*

---

1. Likewise, defendant's challenge to the sufficiency of the evidence corroborating his accomplices' testimony is unpreserved and will not be addressed.

2. Defendant, as the originator of the criminal plan, clearly knew the identity of the intended robbery victim and intended and understood that he had agreed with the others to commit the robbery of the victim; defendant had the requisite mens rea for the crime of conspiracy and it is irrelevant, under the unilateral approach to conspiracy adopted in this state, whether the other coconspirators knew the intended victim's identity from the outset or

*Charles*, 61 NY2d 321, 327 [1984]; *cf. People v Grega*, 72 NY2d 489, 497-498 [1988]). "[W]hen an indictment alleges facts that are extraneous or immaterial to the charges or beyond what is necessary to support the charges, . . . the People need not prove more than those factual allegations necessary to support a conviction" (*People v Grega*, 72 NY2d at 497; *see People v Kuykendall*, 43 AD3d 493, 495 [2007], *lv denied* 9 NY3d 1007 [2007]). The inclusion of the identity of the intended victim in the indictment was not an essential fact required to support the element of conspiracy that defendant entered into a criminal agreement with his coconspirators to commit robbery (*see People v Treuber*, 64 NY2d at 818; *People v Osinowo*, 28 AD3d 1011, 1013 [2006], *lv denied* 7 NY3d 792 [2006]; *cf. People v Grega*, 72 NY2d at 497-498; *People v Barnes*, 50 NY2d 375, 379 [1980]; *People v Vandermuelen*, 42 AD3d 667, 668-669 [2007], *lv denied* 9 NY3d 965 [2007]). The indictment provided defendant with fair notice of the conspiracy accusation against him and the People's theory at trial was the same as that charged in the indictment (*see People v Osinowo*, 28 AD3d at 1013).

We also reject defendant's remaining challenges to the verdict. While County Court improperly allowed rebuttal testimony of a police lieutenant on a collateral matter—i.e., to impeach the testimony of defendant's former girlfriend that she had not observed any marihuana in his bedroom on the day of the crimes—such error was harmless in light of the overwhelming evidence of defendant's guilt (*see People v St. Louis*, 20 AD3d 592, 593 [2005], *lv denied* 5 NY3d 856 [2005]; *see also People v Knight*, 80 NY2d 845, 847 [1992]; *People v Crimmins*, 36 NY2d 230, 242 [1975]; *cf. People v Bellamy*, 26 AD3d 638, 640-641 [2006]). The court, however, properly denied defendant's request for a missing witness charge as to Wells (the shooter) who, unlike the other coconspirators, pleaded guilty to felony murder in exchange for a 20-year prison term without any agreement to testify for the prosecution (*People v Wells*, 18 AD3d at 1022). While clearly knowledgeable about material facts related to these crimes, defendant made no showing, as required, that the incarcerated Wells "would be expected to testify favorably" for the People (*People v Gonzalez*, 68 NY2d 424, 428 [1986]; *see People v Harris*, 19 AD3d 871, 874 [2005], *lv denied* 5 NY3d 806 [2005]; *see also People v Savinon*, 100 NY2d 192, 197 [2003]).

Finally, we are persuaded by defendant's argument that the

_____

when, if ever, there was a "meeting of the minds" on that point (*see People v Caban*, 5 NY3d 143, 149 [2005]; *People v Schwimmer*, 66 AD2d 91, 95-96 [1978], *affd for reasons stated below* 47 NY2d 1004, 1005 [1979]; *see also* Penal Law § 105.30).

imposition of a more severe sentence after his retrial and conviction on the same counts violated his due process rights. Specifically, after the initial trial the sentences were all imposed concurrently (except a $1^1/_3$ to 4-year consecutive sentence for the conspiracy conviction), *resulting in an aggregate sentence of* $26^1/_3$ *years to life* (20 AD3d at 675), whereas after the retrial, the 15-year prison term imposed upon his conviction for criminal possession of a weapon in the second degree was made *consecutive*, resulting in an enhanced aggregate sentence of over $41^1/_3$ to life.[3] Where, as here, a defendant convicted after a retrial receives a longer sentence by the same judge who originally imposed sentence, "the actuality or perception of [institutional] judicial vindictiveness" must be neutralized (*People v Van Pelt*, 76 NY2d 156, 159 [1990]). In order to ensure that defendants are not being penalized for exercising their right to appeal, "a presumption of [institutional] vindictiveness generally arises when defendants who have won appellate reversals are given greater sentences after their retrials than were imposed after their initial convictions" (*People v Young*, 94 NY2d 171, 176 [1999]; *see North Carolina v Pearce*, 395 US 711 [1969]; *People v Van Pelt*, 76 NY2d at 158 [presumption also applies as matter of state due process where different judge imposes sentence after retrial]; *cf. Texas v McCullough*, 475 US 134 [1986] [under federal law, no presumption if sentenced by different judge]).

To overcome the presumption, the reasons for the enhanced sentence must be stated on the record, and " 'must be based on objective information concerning identifiable *conduct* on the part of the defendant *occurring after* the time of the original sentencing proceeding' " (*People v Young*, 94 NY2d at 176-177 [emphases added], quoting *North Carolina v Pearce*, 395 US at 726; *see People v Van Pelt*, 76 NY2d at 159-160). No such subsequent conduct, new facts or events were articulated here to justify the increased sentence (*see People v Van Pelt*, 76 NY2d at 161-162; *cf. People v Caruso*, 34 AD3d 863 [2006], *lv denied* 8 NY3d 879 [2007]; *People v Carroll*, 300 AD2d 911 [2002], *lv denied* 99 NY2d 626 [2003]). Notably, the key witnesses all testified in essentially the same manner and defendant's central role was known. County Court's stated reason for the enhancement—that the incarcerated coconspirators were forced to testify *again*, placing themselves in jeopardy—is not attributable to defendant but, rather, to the original trial court error, and is insufficient to overcome the presumption (*see People v*

---

**3.** A consecutive $1^1/_3$ to 4-year prison term was also imposed after retrial on the conspiracy count; defendant does not challenge this aspect of his sentence, which is the same as after the first trial.

*Van Pelt*, 76 NY2d at 161-162 [if requiring witnesses to testify at a retrial overcame the presumption of vindictiveness, "that common fact would swallow the rule itself"]; *cf. People v Miller*, 65 NY2d 502, 509 [1985], *cert denied* 474 US 951 [1985] [requiring victim to testify at trial after guilty plea vacated on appeal justified higher sentence because the defendant forfeited benefit of bargained-for plea agreement]). Thus, defendant's sentence on the weapons possession count must run concurrently to the other sentences.

Defendant's remaining claims have been considered and found to lack merit.

Cardona, P.J., Peters, Lahtinen and Kane, JJ., concur. Ordered that the judgment is modified, on the law, by directing that defendant's sentence for criminal possession of a weapon in the second degree under count six of the superceding indictment shall run concurrent with the other sentences, and, as so modified, affirmed.