[988 NE2d 473, 965 NYS2d 738]

The People of the State of New York, Appellant, v Randolfo Diaz, Respondent.

Argued February 14, 2013; decided March 26, 2013

**POINTS OF COUNSEL**

*Charles J. Hynes, District Attorney*, Brooklyn (*Ruth E. Ross* and *Leonard Joblove* of counsel), for appellant. I. The trial court

properly allowed the People's expert to testify about how adult sexual abusers may "groom" their child victims to comply with the abusers' sexual demands. (*Dougherty v Milliken*, 163 NY 527; *People v Taylor*, 75 NY2d 277; *De Long v County of Erie*, 60 NY2d 296; *People v Abney*, 13 NY3d 251; *People v Cronin*, 60 NY2d 430; *People v Lee*, 96 NY2d 157; *People v Carroll*, 95 NY2d 375; *People v Spicola*, 16 NY3d 441; *People v Keindl*, 68 NY2d 410; *People v Cintron*, 75 NY2d 249.) II. The trial court properly precluded defendant from calling a witness to testify about a purportedly false prior allegation of sexual abuse that the complainant had allegedly made against that witness. In any event, any error in precluding that testimony was harmless. (*People v Nieves*, 67 NY2d 125; *People v Alvino*, 71 NY2d 233; *People v Zabrocky*, 26 NY2d 530; *People v Mandel*, 48 NY2d 952, 446 US 949; *People v Smith*, 272 AD2d 713; *People v McKnight*, 55 AD3d 1315; *People v Pereau*, 45 AD3d 978; *People v Frary*, 29 AD3d 1223; *People v Hill*, 17 AD3d 1081; *People v Breheny*, 270 AD2d 926.)

*Lynn W.L. Fahey, Appellate Advocates*, New York City (*Anna Pervukhin* of counsel), for respondent. I. The Appellate Division correctly held that precluding respondent from calling the complainant's mother's ex-boyfriend, whom the complainant had previously falsely accused of sexual abuse, as a defense witness deprived him of his constitutional rights to present a defense and to confrontation. (*People v Mandel*, 48 NY2d 952; *People v Bridgeland*, 19 AD3d 1122; *People v Badine*, 301 AD2d 178; *People v Harris*, 151 AD2d 981; *People v Gomez*, 79 AD3d 1065; *People v Vigliotti*, 203 AD2d 898; *People v Zabrocky*, 26 NY2d 530; *People v Alvino*, 71 NY2d 233; *People v Perez*, 40 AD3d 1131; *People v McFarley*, 31 AD3d 1166.) II. The Appellate Division correctly held that the testimony by the People's child sex abuse expert regarding how pedophiles "groom" children, which closely mirrored the complainant's claims, improperly bolstered the complainant's credibility. (*People v Ciaccio*, 47 NY2d 431; *People v Spicola*, 16 NY3d 441; *People v Carroll*, 95 NY2d 375; *People v Taylor*, 75 NY2d 277; *People v Bennett*, 169 AD2d 369; *United States v Scheffer*, 523 US 303; *United States v Barnard*, 490 F2d 907; *People v Kozlowski*, 11 NY3d 223; *United States v Raymond*, 700 F Supp 2d 142; *United States v Brand*, 467 F3d 179.)

### OPINION OF THE COURT

PIGOTT, J.

Defendant, the step-grandfather of the complainant, is alleged to have sexually abused the complainant multiple times in

2006 and 2007, when she was in the fourth and fifth grades. He was charged with course of sexual conduct against a child in the first and second degrees (Penal Law §§ 130.75 [1] [a]; 130.80 [1] [a]) and endangering the welfare of a child (Penal Law § 260.10 [1]).

At a jury trial, the complainant testified that in September 2006, she was living with her mother, her brother, her grandmother, and defendant, in a three-bedroom apartment in Brooklyn. She testified that in the beginning of fourth grade, while the complainant's mother was at work, defendant began sexually abusing her.

The complainant's mother testified that prior to January 2, 2008, she saw nothing to suggest that the complainant might have been abused. Shortly after midnight on January 2, however, the mother found the complainant in her bedroom crying and gasping for air. Complainant told her mother about some of the alleged sexual misconduct of defendant. Mother called the police.

Detective Frank Agostini testified that he recovered sex toys and pornographic videos from a closet in the bedroom shared by defendant and complainant's grandmother. A forensic criminalist determined that DNA on the sex toys did not match that of the complainant.

A physician who examined the complainant testified that he conducted a full genital and anal examination and concluded that there was no "injury" to the complainant's hymen, but "90 percent" of girls who have disclosed sexual intercourse have "normal" intact hymens.

The People also presented the testimony of a psychologist with particular expertise in the field of child sexual abuse. The expert qualified her testimony by stating that she had no dealings with the parties in the case, did not interview the complainant, and reached no conclusions with respect to the case on trial. The witness explained that most children who were sexually abused did not "tell about this right away."

The prosecutor then asked about offender behavior:

> "Q: Have studies been conducted about the manner in which offenders engage children in sexual behavior?
>
> "A: Yes.
>
> "A: No, no, no. You have . . ."
>
> "Q: Do all offenders operate in the same manner?

Defense counsel objected, arguing that the testimony was "supposed to be about alleged victims not about an alleged suspect." The prosecutor countered that studies had been conducted "in the manner in which offenders engage children in sexual behavior," making this a legitimate part of a "general" discussion of "child sexual abuse." The court agreed with the prosecutor.

Defense counsel then argued that the expert could discuss only matters outside the "ken" of the average juror, and "[t]he idea that a family member can create a sense of trust with a child is not beyond the knowledge of the juror"; rather, it is "simple common family interactions." Counsel further argued that allowing such evidence would be outweighed by its prejudice.

When the court suggested that defense counsel address these concerns through cross-examination, counsel protested that "[b]y that time the cat [would be] out [of] the bag" and that it was not permissible to "attach expert testimony to these factors that make[ ] it consistent with our guy's behavior." Even without posing hypotheticals, counsel argued, the similarity between the complainant's testimony and the evidence from the expert would be too great.

The court rejected these arguments and the prosecutor continued her examination:

> "Q: Are there different ways that a child can be engaged in sexual activity?
>
> "A: Sure. There are a number of different ways and part of this is age dependent. Sometimes the activities are introduced as games, sometimes the activities are introduced in the guise of sexual education, sometimes pornography is used."

The court overruled defense counsel's renewed objection. The expert then continued by providing the following definition of "grooming":

> "It refers to the process by which the offender, first of all, gains access and opportunity to the child, establishes themselves in a trusted authority position over the child and then begins the process of breaking down the child's inhibitions about sex, in other words, how the offender normalizes sexual behaviors."

During a break in the proceedings, defense counsel asked that portions of the expert's testimony be stricken, and a curative instruction given. Defense counsel argued that much of the testimony "had nothing to do" with explaining why a victim's behavior would be inconsistent with a layperson's beliefs. Rather, he argued that the expert testified about the ways in which a perpetrator can engage a young victim in sexual activities. She spoke of "ways that a perpetrator could step by step inculcate a young person into sexual acts" and "it mirrored exactly the testimony that we heard here with regard to the use of pornographic videos and with regard to the step by step touching which then leads to stronger touching, which mirrors what the complainant said in this case, the games that they play[ed]." The court denied defense counsel's request.

The defense called a board-certified pediatrician, who examined the complainant's medical records and the fact that she had a "normal" intact hymen. He concluded that given her allegations, the results of her exam were "unexpected," and stated that it was "extremely improbable" that there was penile-vaginal penetration.

The grandmother testified that the complainant used to watch television and frequently spent time online. There were two or three occasions where the complainant locked herself in the grandmother's room, where the grandmother and defendant kept pornographic movies and sex toys.

Four witnesses testified for the defense that the complainant had a poor reputation for honesty. The complainant's uncle stated that among her family, neighbors and friends, the complainant had a reputation as someone who "lies." The complainant's other uncle, and his wife, both stated that the complainant had a reputation for lying and testified as to an incident in which the complainant made a false accusation that someone inappropriately touched her in a park. A neighbor testified that the complainant had a reputation for lying and said that he no longer lets his children play with the complainant because "she lies so constantly."

For a short period of time, the complainant and her family had lived with her younger brother's biological father, Martinez. Defendant sought to call Martinez to testify that approximately five to six years earlier—approximately two years before the instant allegations arose against defendant—the complainant accused him of sexual abuse. The complainant and her mother

denied at trial that the complainant made these allegations against Martinez. The trial court disallowed Martinez's testimony on the grounds that the testimony was collateral and constituted inadmissible hearsay.

The jury acquitted defendant of course of sexual conduct against a child in the first degree, but convicted him of course of sexual conduct against a child in the second degree and endangering the welfare of a child. Defendant appealed, arguing, among other things, that (1) the trial court erred in allowing the expert to testify about how an adult sexual abuser may act to gain the compliance of a child victim without using threats or force; and (2) the trial court erred in precluding Martinez's testimony.

The Appellate Division reversed and remitted the matter for a new trial (85 AD3d 1047 [2d Dept 2011]). As relevant to this appeal, the court found that the trial court erred in precluding the testimony of Martinez and that the error was not harmless (*id.* at 1050). The court further found that the trial court erred in permitting the prosecutor to adduce testimony from the People's child abuse expert (*id.* at 1051). The court agreed with defendant that her testimony, regarding how a sex offender typically operates to win over the trust of a child victim, closely paralleled the testimony of the complainant (*id.*). Such testimony, the court found, improperly bolstered the complainant's credibility (*id.*). Under these circumstances, the court held, "the potential value of the evidence [was] outweighed by the possibility of undue prejudice to the defendant or interference with the province of the jury" (*id.*).

A Judge of this Court granted the People leave to appeal (18 NY3d 882 [2012]).

■ Expert testimony is properly admitted if it helps to "clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror" (*De Long v County of Erie*, 60 NY2d 296, 307 [1983]). Here, it was not an abuse of discretion for the trial court to permit expert testimony regarding the behavior of sexual abusers. That testimony is permissible as helpful for the jury to understand victims' unusual behavior (*see People v Williams*, 20 NY3d 579 [2013] [decided today]). Although some of the testimony discussed behavior similar to that alleged by the complainant in this case, the expert spoke of such behavior in general terms (*cf.*

*id.* [finding it was improper for the prosecutor to pose hypothetical questions to the expert that mirrored the abuse that occurred in that particular case]). In addition, the jury heard the expert testify that she was not aware of the facts of the particular case, did not speak with the complainant and was not rendering an opinion as to whether sexual abuse took place.

We agree with the Appellate Division, however, that the proffered testimony of Martinez should have been permitted at trial. Evidence of a complainant's prior false allegations of sexual abuse is not inadmissible as a matter of law (*see People v Hunter*, 11 NY3d 1, 6 [2008]). Rather, it may be permitted if the prior allegations "suggest a pattern casting substantial doubt on the validity of the charges" (*People v Mandel*, 48 NY2d 952, 953 [1979]).

Here, Martinez's proposed testimony went to a material issue of defendant's defense, namely, whether the complainant had a history of making false allegations of sexual abuse by family members. Defense counsel sought to introduce the testimony as a prior inconsistent statement; to confront the complainant's testimony that she never made an allegation against Martinez and to rebut the testimony of the complainant's mother who testified she was unaware of any accusation made by complainant against Martinez. These statements opened the door to Martinez's rebuttal, which, if believed, suggested that the testimony of the complainant and her mother were not credible.

The evidence of defendant's guilt was far from overwhelming in this case. There was no medical evidence or DNA evidence to corroborate the complainant's claims. Indeed, the medical evidence ran contrary to complainant's claim that defendant had vaginal intercourse with her. Moreover, the jury acquitted defendant of the top count, indicating that the jury may well have discredited a portion of complainant's testimony. Thus, the trial court's error in excluding the testimony of Martinez was not harmless.

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (concurring). I concur in the result, and write separately because I believe the majority incorrectly concludes that the expert testimony was properly admitted under our prior decision in *People v Spicola* (16 NY3d 441 [2011]) and today's decision in *People v Williams* (20 NY3d 579 [2013]).

I would hold that the expert testimony crossed the line from testimony "helpful for the jury to understand victims' unusual behavior" (majority op at 575), and instead described abuser conduct that was analogous to the complainant's testimony. Thus, it would tend to imply the complainant's testimony was credible. The expert's testimony discussing similar behavior to that alleged by the complainant was not of such a general matter that it avoids the problems we noted in *Williams*. By referencing as abuser conduct the use of pornography, and the escalation in physical intimacy and sexual touching, the expert described conduct supporting the complainant's testimony of abuse. The expert also used terminology characterizing abusers as "smooth and savvy," clearly meant as a descriptor of the abuser. The expert further described how she trains people to distinguish between a fabrication and real experience, which included her description of tactile differentiation. By testifying about increased and escalating touching, the expert bolstered complainant's testimony that she had physical encounters with the defendant that increased in intimacy over time.

It is unclear how a response from an expert to a hypothetical that mirrors the victim's testimony is more problematic than expert testimony submitted outside the context of a hypothetical situation. Potentially the latter is more prejudicial because it is an organic response from the expert, rather than one that might appear "coached." As the majority states in this Court's factual summary of the case below, the trial judge indicated to defense counsel that he could cross-examine the expert. Specifically, she told counsel that he could ask if the expert "never looked at the file, doesn't know anything about the kid, never met this kid, was never told about any of the particular facts of the case." However, such cross-examination may only solidify in the jurors' minds the expert's testimony.

To the extent the expert's testimony attempts to explain the victim's responses and conduct, it demonstrates the difficulty in drawing the line between permissible and impermissibly suggestive testimony. Unlike *Williams*, where we found harmless error, I would hold the testimony in this case is prejudicial, warranting reversal. Here, as the majority concludes, there is a lack of overwhelming proof of defendant's guilt, and medical evidence contrary to the complainant's claim.

On the issue of the preclusion of testimony by Mr. Martinez, I agree with the majority that the preclusion was reversible error, and therefore concur in affirming the Appellate Division's order, reversing and remitting for a new trial.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge RIVERA concurs in result in an opinion.

Order affirmed.