[987 NE2d 260, 964 NYS2d 483]

The People of the State of New York, Respondent, v Bill Williams, Appellant.

Argued February 14, 2013; decided March 26, 2013

POINTS OF COUNSEL

*Lynn W.L. Fahey, Appellate Advocates*, New York City (*Kendra L. Hutchinson* of counsel), for appellant. I. Appellant was denied a fair trial by sex abuse expert testimony that recounted the typical behavior of abusers, that provided a "professional opinion" that detail after detail of the complainants' behavior was "consistent with" child sex abuse syndrome, and that the factfinder admitted he did not need. (*People v Rivers*, 18 NY3d 222; *De Long v County of Erie*, 60 NY2d 296; *People v Lee*, 96 NY2d 157; *People v Taylor*, 75 NY2d 277; *People v Cronin*, 60 NY2d 430; *People v Bennett*, 79 NY2d 464; *People v Carroll*, 95 NY2d 375; *People v Singh*, 186 AD2d 285; *People v McGuinness*, 245 AD2d 701; *People v Spicola*, 16 NY3d 441.) II. Appellant was denied the effective assistance of counsel when his attorney failed to (a) properly challenge the testimony of the People's child sex abuse expert; (b) know under which statutory subdivisions the most serious crimes were charged; or (c) challenge or even seek to clarify the numerous vague and amorphous counts, some of which the People eventually conceded were either multiplicitous or legally insufficient. (*Strickland v Washington*, 466 US 668; *People v Baldi*, 54 NY2d 137; *Fisher v Gibson*, 282 F3d 1283; *Williams v Washington*, 59 F3d 673; *People v Zaborski*, 59 NY2d 863; *People v Hewitt*, 95 AD3d 1358; *People v Cortez*, 296 AD2d 465; *Eze v Senkowski*, 321 F3d 110; *Gersten v Senkowski*, 426 F3d 588; *People v Spicola*, 16 NY3d 441.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Ruth E. Ross* and *Leonard Joblove* of counsel), for respondent. I. Defendant has, in part, failed to preserve his claim regarding the admissibility of the expert testimony on the behaviors of child victims of sexual abuse. Moreover, that testimony was properly admitted. In any event, any error in admitting that testimony was harmless. (*People v Person*, 8 NY3d 973; *People v Garcia*, 83 NY2d 817; *People v Qualls*, 55 NY2d 733; *Dougherty v Milliken*, 163 NY 527; *People v Taylor*, 75 NY2d 277; *De Long v County of Erie*, 60 NY2d 296; *People v Abney*, 13 NY3d 251; *People v Cronin*, 60 NY2d 430; *People v Lee*, 96 NY2d 157; *People v Carroll*, 95 NY2d 375.) II. Defendant received the effective assistance of counsel. (*People v Henry*, 95 NY2d 563; *People v Benevento*, 91 NY2d 708; *People v Hobot*, 84 NY2d 1021; *Strickland v Washington*, 466 US 668; *People v Taylor*, 1 NY3d 174; *People v Caban*, 5 NY3d 143; *People v Satterfield*, 66 NY2d 796; *People v Stultz*, 2 NY3d 277; *People v Flores*, 84 NY2d 184.)

**OPINION OF THE COURT**

PIGOTT, J.

Defendant was charged with various sex crimes pertaining to separate incidents involving two 12-year-old girls. At a bench trial, the People presented the testimony of an expert witness on the subject of child sexual abuse accommodation syndrome (CSAAS). We agree with defendant that the expert's testimony was not adequately limited because certain hypothetical questions posed by the prosecutor improperly bolstered the People's proof that defendant was the perpetrator. However, because the evidence of defendant's guilt was otherwise overwhelming, we find the error harmless and affirm.

In 2006 and 2007, defendant lived with his girlfriend, NW, and her 12-year-old twin daughters. NW's 12-year-old sister, PW, who lived nearby, often visited overnight, sharing the twins' bedroom. In May of 2007, PW reported to an assistant principal that defendant was sexually abusing her. Defendant was indicted for second-degree course of sexual conduct against a child as to AW, one of NW's daughters, and for rape and numerous additional counts as to PW.

At a bench trial, the People presented, along with the testimony of both AW and PW, the testimony of a physician who examined PW. Her findings were consistent with a report of the type of sexual abuse to which PW testified.

The People also called an expert on CSAAS. He explained that he did not meet the complainants nor was rendering any opinion about any facts specific to the case. Rather, his testimony concerned CSAAS and its five stages. He began by describing actions of a perpetrator as opposed to the victim, i.e. the "engagement" phase, during which an adult who is an authority figure with respect to the child utilizes his or her position within the family to change from a caretaking relationship with the child to a sexual relationship.

He then moved on to the second stage, "sexual interaction," which he also explained in terms of the abuser's actions:

> "That's where the adult, in some way, has a physical relationship with a child. The sexual acts that occur may be progressive, meaning, that over time they may become more intrusive. This may be more than one act, and the sexual interaction phase may last for a long period of time or it may be a brief period of time depending on the circumstances."

The third stage, described as "secrecy," was explained in terms of both what an abuser does and why the child keeps the matter secret—because of embarrassment or shame, "sometimes enforced" by the adult telling the child to keep it secret or suggesting negative consequences if it is revealed. Only then did the expert reach the stage of "disclosure," which, he opined, may be delayed because of the child's fear, shame, or emotional confusion. A final stage called "repression," was said to involve the child's difficulty in thinking about or remembering the abuse.

The prosecutor then presented the expert witness with a series of hypothetical questions that mirrored the girls' testimony and asked if various facets of that testimony were consistent with the syndrome. He asked, for example:

> "Now, Doctor, is it consistent with the syndrome of a child living in her own home with a man who is her mother's live-in boyfriend, is it consistent with a syndrome that this man would have this child straddle him . . . that this child would not call out to another child similar in age who is sleeping in the very next room?"

The Court overruled objections to this type of questioning. Defendant was ultimately found guilty on all counts.

On appeal, the Appellate Division modified, on grounds not relevant here, but otherwise affirmed (91 AD3d 679 [2d Dept 2012]). The court held that the trial court had providently exercised its discretion in admitting the expert testimony. Citing this Court's decision in *People v Spicola* (16 NY3d 441, 465-466 [2011], *cert denied* 565 US —, 132 S Ct 400 [2011]), the court held:

> "While the hypothetical situation described by the prosecutor during the direct examination of the expert bore some similarities to the facts of this case, the expert did not offer an opinion with respect to the credibility of the complainants, and expressly disavowed any intention of rendering an opinion as to whether the complainants were victims of sexual abuse" (91 AD3d at 681).

A Judge of this Court granted defendant leave to appeal.

■ The admissibility of expert testimony is dependent on whether the expert testimony "would help to clarify an issue calling for professional or technical knowledge, possessed by the

expert and beyond the ken of the typical juror" (*De Long v County of Erie*, 60 NY2d 296, 307 [1983]). Generally, that determination is left to the sound discretion of the trial court (*id.*).

This Court has held that "expert testimony regarding rape trauma syndrome, abused child syndrome or similar conditions may be admitted to explain behavior of a victim that might appear unusual or that jurors may not be expected to understand" (*People v Carroll*, 95 NY2d 375, 387 [2000]). Such testimony is allowed to explain, as originally offered here, why a child may not have immediately reported sexual abuse. It is not permitted, however, for the purpose of showing that the expert considers a particular complainant to be credible (*id.*).

Recently, in *People v Spicola*, we upheld the admission of expert testimony regarding CSAAS to rehabilitate the complainant's credibility (16 NY3d 441). There, as in this case, the expert had not met the victim and explained that the testimony was not to be construed as giving an opinion as to whether the victim was indeed a victim of abuse. The expert's testimony explained unusual behavior of child abuse victims and, particularly, why a child may wait a long time before reporting the alleged abuse. This testimony, we held, was permissible in explaining CSAAS (*id.* at 466-467).

Defendant argues that the expert testimony here was inadmissible because it did not focus only on the victim's behavior but also discussed the behavior of sexual abusers. The typical behavior of a sexual abuser, defendant argues, is not beyond the ken of a typical juror. Here, the admission of the expert's testimony concerning abusers' behavior that was relevant to explain the accommodation syndrome was a proper exercise of discretion. That testimony assisted in explaining victims' subsequent behavior that the factfinder might not understand, such as why victims may accommodate abusers and why they wait before disclosing the abuse.

We agree with defendant, however, that the expert's testimony exceeded permissible bounds when the prosecutor tailored the hypothetical questions to include facts concerning the abuse that occurred in this particular case. Such testimony went beyond explaining victim behavior that might be beyond the ken of a jury, and had the prejudicial effect of implying that the expert found the testimony of this particular complainant to be credible—even though the witness began his testimony claiming no knowledge of the case before the court.

This error, however, was harmless because the evidence of defendant's guilt was overwhelming and there was no significant probability that, but for the introduction of the erroneous portion of his testimony, defendant would have been acquitted. Here, both victims testified in detail as to the sexual acts committed by defendant. In addition, PW's testimony was corroborated by the medical evidence presented at trial.

Finally, we conclude that defendant's claim that he was denied the effective assistance of counsel is without merit.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and RIVERA concur.

Order affirmed.