*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    October 23, 2014                    102780
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,
        v                                    MEMORANDUM AND ORDER

HAROLD E. McCLOUD III,
                        Appellant.
_____


Calendar Date:    September 2, 2014

Before:   Lahtinen, J.P., Stein, McCarthy, Rose and Devine, JJ.

                    _____


        Richard V. Manning, Parishville, for appellant.

        Derek P. Champagne, District Attorney, Malone (Glenn
MacNeill of counsel), for respondent.

                    _____


McCarthy, J.

        Appeal from a judgment of the County Court of Franklin
County (Main Jr., J.), rendered May 18, 2009, upon a verdict
convicting defendant of the crimes of rape in the first degree,
attempted assault in the second degree, grand larceny in the
fourth degree, identity theft in the second degree, unlawful
possession of personal identification information in the third
degree, assault in the third degree (five counts), petit larceny
(two counts), unlawful imprisonment in the second degree (two
counts), criminal mischief in the fourth degree and menacing in
the second degree.

        Defendant was charged in a 21-count indictment with various
crimes allegedly committed against his paramour.  Following a
jury trial, he was found guilty of 16 counts: rape in the first

degree, attempted assault in the second degree, grand larceny in the fourth degree, identity theft in the second degree, unlawful possession of personal identification information in the third degree, assault in the third degree (five counts), petit larceny (two counts), unlawful imprisonment in the second degree (two counts), criminal mischief in the fourth degree and menacing in the second degree. County Court sentenced him to an aggregate prison term of 18 years, followed by 20 years of postrelease supervision, as well as fines and restitution. Defendant appeals.

The conviction of rape in the first degree was not against the weight of the evidence. To establish that crime, the People were required to prove that defendant engaged in sexual intercourse with the victim by forcible compulsion (see Penal Law § 130.35 [1]). Forcible compulsion is defined to include physical force or a threat that "places a person in fear of immediate death or physical injury" (Penal Law § 130.00 [8]; see People v Fulwood, 86 AD3d 809, 810 [2011], lv denied 17 NY3d 952 [2011]). In his statement to police, defendant admitted that he had sexual intercourse with the victim, but claimed that it was consensual. Therefore, the only element at issue was forcible compulsion. The victim testified that after a day filled with arguing and violence between them, defendant hit her head causing it to slam into a door, repeatedly punched her in the leg, refused to allow her to leave the bedroom, pushed her down on the bed, straddled her body, choked her to the point that she could not breathe, told her he was "going to make it hurt" and pinned her hands over her head. When he let go of her hands to pull her pants down, she scratched his face. He then put his penis into her vagina and continued to have sex despite her telling him no, to stop, and that she did not want to. After this incident, friends and family members noticed scratches on defendant's face or neck. The victim also testified about an incident approximately two weeks prior to the rape, during which defendant physically assaulted her numerous times. According due deference to the jury's credibility determinations, the evidence proved that defendant used physical force and caused the victim to fear further physical injury or death, thereby establishing the element of forcible compulsion (see People v Blond, 96 AD3d 1149, 1151-1152 [2012], lv denied 19 NY3d 1101 [2012]; People v

<u>Fulwood</u>, 86 AD3d at 810-811). Thus, the rape conviction was not against the weight of the evidence.

The conviction of attempted assault in the second degree was also not against the weight of the evidence. To prove that crime, the People needed to show that defendant intended to cause serious physical injury to another person and "engage[d] in conduct which tend[ed] to effect the commission of such crime" (Penal Law § 110.00; <u>see</u> Penal Law § 120.05 [1]). Attempted assault in the second degree can be proven without any serious physical injury or even any physical injury; "all that is required is that the defendant 'intended such injury and engaged in conduct directed at accomplishing that objective'" (<u>People v Agron</u>, 106 AD3d 1126, 1128 [2013], <u>lv denied</u> 21 NY3d 1013 [2013], quoting <u>People v Audi</u>, 88 AD3d 1070, 1072 [2011], <u>lv denied</u> 18 NY3d 856 [2011]; <u>see</u> <u>People v Johnson</u>, 107 AD3d 1161, 1163 [2013], <u>lv denied</u> 21 NY3d 1075 [2013]). Intent can be inferred from a defendant's conduct and the surrounding circumstances (<u>see</u> <u>People v Naradzay</u>, 11 NY3d 460, 467 [2008]; <u>People v Carte</u>, 113 AD3d 191, 195 [2013], <u>lv denied</u> 23 NY3d 1035 [2014]). In his statement to police, defendant said that after they had consensual sex, the victim became agitated and he put his hand on her neck for a few seconds to calm her down. On the other hand, the victim testified that, prior to defendant forcibly having sex with her, he straddled her and placed both hands around her neck, squeezing so hard that she was unable to speak or breathe and her body felt "shaky" and "tingly." She indicated that she came close to passing out, and that this incident was worse than the two choking incidents that occurred earlier that day (for which defendant was acquitted). A physician testified that when pressure is applied to the neck so that it prevents a person from breathing, such constriction can cause bruising and hemorrhaging, but can also cause loss of consciousness, brain damage, loss of memory, paralysis and even death. Considering the victim's testimony concerning defendant's violent conduct toward her before and after the choking,[1] the jury could reasonably have

---

[1] We reject defendant's argument assigning error to the use of the word "strangling" in the indictment while the testimony referred to him "choking" the victim. Contrary to his assertion

inferred that he intended to cause her serious physical injury. Giving deference to the jury's credibility findings, the conviction for attempted assault in the second degree is not against the weight of the evidence (see People v Carte, 113 AD3d at 195; People v Bruno, 47 AD3d 1064, 1066 [2008], lv denied 10 NY3d 809 [2008]).

The merger doctrine is inapplicable here. That doctrine prevents a conviction for kidnapping or a similar crime based on acts that are an integral part of another substantive crime, so as to preclude independent criminal liability (see People v Gonzalez, 80 NY2d 146, 153 [1992]; People v Woodard, 93 AD3d 944, 948 [2012]). While the choking of the victim was one of the acts constituting the element of forcible compulsion for the rape count, it was also a discrete act that was not necessary for the commission of the rape and was an independent crime warranting separate punishment (see People v Woodard, 93 AD3d at 948-949).

County Court did not err in denying defendant's motion to sever certain counts of the indictment. While the counts charging defendant with the theft and use of the victim's debit card and camera were based on different criminal transactions than the counts related to the physical abuse he perpetrated on her, offenses are joinable in a single indictment if proof of one "would be material and admissible as evidence in chief upon a trial of the second" (CPL 200.20 [2] [b]; see People v Carter, 74 AD3d 1375, 1378 [2010], lvs denied 15 NY3d 772 [2010]). Here, proof of the assault-based charges would be material and admissible at a trial on the theft-based charges, as Molineux evidence to prove defendant's motive, intent and lack of mistake, as well as the nature of the parties' relationship (see People v Washpun, 134 AD2d 858, 858 [1987], lv denied 70 NY2d 1012 [1988];

---

that strangulation was inaccurately used here because it means to kill by choking, the terms strangling and choking are often used interchangeably (see e.g. People v Bonney, 69 AD3d 1116, 1117 [2010], lv denied 14 NY3d 838 [2010]), and the Penal Law does not require death to prove strangulation (see e.g. Penal Law § 121.12 [enacted after defendant's conviction, creating new crime of "strangulation in the second degree"]; Penal Law § 121.13).

see also <u>People v Ivy</u>, 217 AD2d 948, 949 [1995], <u>lv denied</u> 86 NY2d 843 [1995]).  As the offenses were joinable under the statute, the court properly denied the severance motion (<u>see</u> <u>People v Lane</u>, 56 NY2d 1, 7 [1982]).

Defendant was not deprived of a fair trial by the testimony of the People's expert.  The expert was properly permitted to testify regarding rape trauma syndrome and battered spouse syndrome to explain to the jury why a victim may exhibit certain behavior or engage in certain actions that jurors might not expect or understand (<u>see</u> <u>People v Williams</u>, 20 NY3d 579, 584 [2013]; <u>People v Spicola</u>, 16 NY3d 441, 463 [2011], <u>cert denied</u> ___ US ___, 132 S Ct 400 [2011]; <u>People v Taylor</u>, 75 NY2d 277, 289 [1990]).  The expert had never met the victim or reviewed any reports about the charged crimes and did not render an opinion about the victim's credibility, whether she had been the victim of sexual abuse or whether her behavior fit within the syndromes (<u>see</u> <u>People v Spicola</u>, 16 NY3d at 465-466; <u>People v Jabaut</u>, 111 AD3d 1140, 1145 [2013], <u>lv denied</u> 22 NY3d 1139 [2014]).  Although the expert discussed the behavior of abusers, that testimony was necessary to explain the cycle of domestic violence and how victims respond to their abusers (<u>see</u> <u>People v Diaz</u>, 20 NY3d 569, 575 [2013]; <u>People v Williams</u>, 20 NY3d at 584).  The People did not ask inappropriate hypothetical questions that were tailored to the facts of this case; rather, the expert's testimony closely reflected the victim's testimony in some regards because it appears that the relationship between the victim and defendant resembled a classic example of a domestic violence relationship (<u>see</u> <u>People v Diaz</u>, 20 NY3d at 575-576; <u>compare</u> <u>People v Williams</u>, 20 NY3d at 584).

The content of the verdict sheet did not constitute error per se, as defendant consented to the annotated verdict sheet and no mode of proceedings error occurred so as to circumvent the preservation requirement.  CPL 310.20 (2) allows the trial court, when submitting two or more counts charging offenses from the same article of law, to "set forth the dates, names of complainants or specific statutory language, without defining the terms, by which the counts may be distinguished."  Absent a defendant's consent, any other notations on the verdict sheet "offend the letter of the law" (<u>People v Damiano</u>, 87 NY2d 477,

482 [1996]; see People v Bjork, 105 AD3d 1258, 1264 [2013], lv denied 21 NY3d 1040 [2013], cert denied ___ US ___, 134 S Ct 1306 [2014]; People v Washington, 9 AD3d 499, 500 [2004], lvs denied 3 NY3d 675, 680, 682 [2004]).

Here, County Court included the dates for all offenses, even for counts that were the only offenses charged under a particular article of the law. Although most of the counts charged an offense where at least one other count was alleged under the same article, some were annotated with dates, time of day, the victim's name and language not from the relevant statute but from the indictment. Although the dates and victim's name were authorized by statute in the latter circumstances, the dates in the former circumstances and the indictment language were not (see CPL 310.20 [2]).[2] Despite this variation from the statute, defendant consented to the annotated verdict sheet. While defendant now argues that the record does not show his consent to the final version of the verdict sheet, counsel saw a prior version during a conference, he asked for specific changes, the court stated the changes it would make in response to the defense request, the final version contains those changes and defendant did not object prior to the court giving the verdict sheet to the jury. Under the circumstances, although it appears that counsel and defendant explicitly consented, they at least impliedly consented to the annotations, which is sufficient (see People v Washington, 9 AD3d at 500-501). Although the court did not instruct the jury regarding those notations, as required by statute (see CPL 310.20 [2]), defendant failed to preserve that argument through a proper objection (see People v Hicks, 12 AD3d 1044, 1045 [2004], lv denied 4 NY3d 799 [2005]). The omission of such limiting instructions and deviation from the statutorily-authorized annotations to the verdict sheet do not constitute mode of proceedings errors that would require reversal regardless

_____

[2] Notably, the time of day was helpful to clarify certain charges, particularly the three counts of attempted assault in the second degree based on defendant choking the same victim at different times during the same day. The annotations permitted by statute would not have been sufficient to differentiate those counts.

of preservation (see People v Wheeler, 257 AD2d 673, 673-674 [1999], lv denied 93 NY2d 930 [1999]; see also People v Agramonte, 87 NY2d 765, 769-770 [1996]; People v Mariko, 267 AD2d 113, 113 [1999], lv denied 94 NY2d 950 [2000]).

County Court did not err in its Molineux/Ventimiglia ruling. The People sought to use evidence of defendant's alleged uncharged conduct with numerous women that purportedly evinced defendant's "continuing plan to satisfy his desire for compelled or forced sex." County Court denied the People's application to use such material in its case-in-chief on the ground that the prejudicial effect would outweigh its probative value, but the court reserved its decision as to whether the material could be used on cross-examination of defendant or on rebuttal. Courts may reasonably determine to reserve decision on a Molineux/Ventimiglia application, especially as to the use of such information on cross-examination, until they can assess the testimony put forth at trial and the defenses that are being raised (see People v Torres, 19 AD3d 732, 734 [2005], lv dismissed 5 NY3d 810 [2005]; People v Mahan, 195 AD2d 881, 883-884 [1993]; see also People v Ventimiglia, 52 NY2d 350, 362 [1981] [directing the People to request a ruling outside the presence of the jury, but noting that, as to timing, "[w]hether some time prior to trial, just before the trial begins or just before the witness testifies will depend upon the circumstances of the particular case"]; People v Mitchell, 112 AD3d 1071, 1073 [2013] [noting that a defendant's testimony and defenses may open the door to Molineux evidence that would otherwise be excluded], lv denied 22 NY3d 1140 [2014]; People v Kato, 24 AD3d 152, 152 [2005], lv denied 6 NY3d 835 [2006]).

Defendant received meaningful representation. When reviewing a claim of ineffective assistance of counsel, courts must avoid confusing actual ineffectiveness with mere losing tactics, and a defendant must demonstrate the absence of strategic or reasonable explanations for counsel's alleged shortcomings (see People v Benevento, 91 NY2d 708, 712 [1998]). To prevail on such a claim, any errors by counsel must be "so egregious and prejudicial as to render the trial unfair" (People v Timberlake, 42 AD3d 761, 762 [2007]). Here, counsel did not fail to provide meaningful representation through his lack of an

objection to the comments of a potential juror during voir dire regarding the reputation of a police officer who was to be a witness. County Court asked follow-up questions that diminished the possible negative effects of those comments and instructed the jurors that they must scrutinize the testimony of police officers as they would the testimony of any other witness, thereby neutralizing any likelihood of substantial prejudice to defendant (see People v Wells, 7 NY3d 51, 60 [2006]). Thus, counsel's failure to request further curative instructions did not constitute ineffective assistance.

While defendant now attacks counsel's cross-examination of the officer who obtained defendant's statement, it appears that counsel was employing a reasonable strategy to show that defendant was cooperative with police, indicating that he had nothing to hide. Counsel's choice to decline to cross-examine several witnesses also appears strategic, as he avoided highlighting potentially damaging portions of their testimony (see People v Aiken, 45 NY2d 394, 400 [1978]). Defendant contends that counsel's cross-examination of the victim was inept, in that it elicited damaging testimony regarding the choking. Viewed in the context of counsel's summation, however, this was part of an effective strategy, considering that the jury acquitted defendant of two of the three counts alleging offenses based on the choking. When viewed in totality, including counsel's success in obtaining dismissal of two counts prior to trial and acquittal on three counts at trial, counsel provided defendant with meaningful representation (see People v Noguel, 93 AD3d 1319, 1321 [2012], lv denied 19 NY3d 965 [2012]; People v Head, 90 AD3d 1157, 1159 [2011]).

We have reviewed defendant's remaining contentions and find them to be without merit.

Lahtinen, J.P., Stein, Rose and Devine, JJ., concur.

ORDERED that the judgment is affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court