*603 OPINION OF THE COURT
Mark Dwyer, J.
Defendant Jose Felix moves for an order precluding prosecution testimony about Child Sexual Abuse Syndrome (hereinafter CSAS). In the alternative, defendant seeks a Frye hearing concerning such testimony. (See Frye v United States, 293 F 1013 [DC Cir 1923].) Defendant’s motion will be denied, except as noted below.
A
Defendant is charged with one count of sexual conduct against a child in the first degree and related crimes. The People’s theory is that defendant abused a young family member on five occasions over the course of about 11 years, while she was from 12 to 23 years old. The complainant reported the crimes only after the final incident.
The People intend to call at trial a psychologist, Dr. Eileen Treacy. Dr. Treacy would testify about CSAS.[1] In particular, she would note that certain types of behavior by the victim which might otherwise seem odd are in fact consistent with the conduct of a number of other child sexual abuse victims. The doctor would not testify to a general group of “symptoms” of child abuse, or encourage jurors to conclude from similar circumstances in this case that abuse occurred. Nor would Dr. Treacy opine that the complaining witness in fact was abused, much less that defendant abused her.
Defendant asserts that the testimony proffered by the People is not, or at least is no longer, generally considered reliable by members of the relevant scientific community. On that point, defendant insists, it would be in order at least to hold a Frye hearing. Defendant argues as well that the expert testimony should not be admitted because its subjects are not “beyond the ken” of a typical juror. In the alternative, defendant asks that on this point a ruling be held in abeyance until after a “thorough” voir dire tests whether the jurors require expert aid.
B
The legal standards which govern defendant’s Frye claim are well settled. Opinion evidence from experts, and in particular *604 expert testimony based on science, may be received in New York. But that is true only if the members of the relevant scientific community generally accept the validity of the underlying principles. The acceptance need not be unanimous. Still, the proponent of the evidence must show widespread agreement about those principles in that relevant community.[2]
In an individual case the existence of a Frye consensus may be demonstrated in several ways. The simplest method is for the proponent of expert testimony to show that New York’s courts have already recognized that there is general scientific acceptance of the evidence. That method applies here. Numerous appellate decisions hold admissible, against challenges akin to defendant’s, testimony about CSAS and related syndromes. (See e.g. People v Carroll, 95 NY2d 375 [2000]; People v Taylor, 75 NY2d 277 [1990]; People v Houston, 250 AD2d 535 [1st Dept 1998].) Defendant does not dispute the existence of that legal authority. He does cite cases from New Jersey, Pennsylvania, and Kentucky. But even if those cases are read to bar all CSAS-type testimony, they plainly are not controlling in the face of New York cases like those cited above.
Defendant thus seeks in effect to reargue the holdings of the New York cases. He suggests that the prior consensus about the validity of CSAS testimony has disappeared, and that this court should rule that such testimony no longer can be admitted. It plainly is possible for new developments to disrupt a well-established consensus and require the courts to reverse prior Frye rulings. Right now, the admissibility of several types of forensic evidence which were accepted in the past—hair match and bite mark evidence, for example—is undergoing reevaluation.
Unfortunately for defendant, he can bring little to the table to support his claim that the CSAS consensus is no longer extant. At the heart of his argument is a single recent article— one published in 2015 in a law journal, not a scientific one.[3] The author of that article, like the several authors of older works which defendant cites, complains of uses of CSAS *605 testimony that are not permitted in New York. (See section C, infra.) It would take far more than that article, and older books or articles which precede the cases finding CSAS evidence admissible in New York, for this court to conclude that the prior consensus is gone.[4]
C
In short, this court concludes that CSAS evidence will be admissible at defendant’s trial. But the case law and common sense require the court to add that not all CSAS testimony will be admitted at trial. Syndrome evidence of this type may not be used as a sword, but it may be used as a shield. That “sword-shield” reference is not only hackneyed, but also a bit too simple. Still, it provides a useful starting principle, and one that in this case addresses what the People ask that their expert be allowed to say.
The case law identifies two general functions for CSAS testimony. An expert can say that there are facts which often follow from child sexual abuse—and list them. Those facts may well include circumstances present in the particular case. The jurors could conclude, and the prosecutor may expressly ask them to conclude, from this factual coincidence that sexual abuse occurred. In past cases, experts have even advised juries that sexual abuse occurred, and that the defendant on trial committed it. This is what the court means when it references use of CSAS as a “sword.” And such use plainly is not acceptable in New York. (See People v Carroll, 95 NY2d at 387; People v Taylor, 75 NY2d at 293; but see People v Diaz, 20 NY3d 569, 575-576 [2013].)
But CSAS testimony may also be used as a shield. By that the court means, and the case law states, that CSAS testimony can explain reactions by a complaining witness that otherwise could cause jurors unfairly to question the witness’s credibility. (See People v Carroll, 95 NY2d at 387; People v Taylor, 75 NY2d at 292-293; People v Gopaul, 112 AD3d 966, 966-967 [2d Dept 2013]; People v Guzman, 202 AD2d 272 [1st Dept 1994].)
A classic example is presented here. The complaining witness did not report defendant’s alleged crimes for over a decade after they are said to have begun. The court has no doubt *606 that defendant will point very prominently to this circumstance at trial. And even if defendant did not make much of it, the delay plainly would be noted and considered by the jury. Expert CSAS testimony might advise the jury that many children suffer sexual abuse in silence, and explain why that might happen. Such testimony will not ask the jury to conclude from delayed reporting that sexual abuse occurred; it will simply posit a possible reason for the delay. Such testimony is proper “shield” testimony.
This court has not been informed of precisely what circumstances might underlie “shield” testimony in this case. No doubt, in most cases an exhaustive list of such circumstances could not reliably be presented before trial. For these purposes it will suffice for this court to say that the doctor can present “shield” testimony, but not “sword” testimony, in the sense of those words explained above.
D
In addition to his claim that CSAS testimony is no longer generally accepted in the scientific community, defendant argues that such testimony is not “beyond the ken” of laymen, a precondition of expert testimony. The point is in tension with defendant’s claim that scientists now doubt the validity of CSAS testimony. But it is true that some aspects of expert CSAS testimony could be obvious to laymen, even while other aspects are not. The court will assume that defendant means to protest that the only accepted aspects of expert CSAS testimony are considered reliable precisely because they are obvious.
The court disagrees. First, no New York case cited by defendant, and none known to this court, excludes expert CSAS testimony on this ground. Some controlling cases expressly reject defendant’s position. (See e.g. People v Carroll, 95 NY2d at 387; People v Taylor, 75 NY2d at 288-289; People v Rodriguez, 261 AD2d 155 [1st Dept 1999].)
Second, defendant has identified no evidence likely to be presented here that fits into his “obvious to laymen” category. One can readily imagine expert testimony in one field or another that would do so; it does not take an identification expert to inform jurors that we do not see people as clearly at night and from a distance as we do in the day and at close range. In this case it is possible, for example, that the prosecution expert would attempt to say at trial that child sexual abuse victims *607 hesitate to accuse close family members. If so, the trial judge could rule that such a proposition would be obvious to jurors, and preclude an expert opinion.
But this court rejects the view that no possible CSAS testimony is “beyond the ken” of jurors. Once again, for example, here the complaining witness allegedly did not come forward for over a decade, despite repeated instances of abuse. A credibility issue is sure to be based on that fact, or at least to occur to the jurors, and what the People’s expert would say would not be obvious to the jurors. Or, perhaps, the complainant will testify with a flat, unemotional demeanor. An expert may offer a non-obvious explanation for that demeanor that will ring true with the jurors. Like prior courts, therefore, this court will not exclude all CSAS expert testimony on the theory that it will not be “beyond the ken” of the jurors.
Third, defendant suggests that jurors have been exposed by popular literature to the substance of CSAS principles, and are now too well educated on the subject to require expert opinions. But that position absurdly overstates the sophistication and depth of popular literature. It is most unlikely, for example, that “Law and Order: SVU” has educated the whole jury pool to the possible relation of a flat testimonial affect to child sexual abuse. Defendant’s point might be better taken if any court had ever excluded testimony from a DNA expert on the theory that “CSI” episodes have rendered such testimony superfluous. The court awaits a citation.
Finally, defendant posits that a “thorough” voir dire may show that expert testimony is not needed. As to permissible voir dire, this court will defer to the trial judge. It is, however, hard to imagine that voir dire could moot the need for expert testimony. Questions to potential jurors about whether, for example, they “could” convict on the word of a decade-late complainant, even if answered affirmatively, are no substitute for expert explanations for delay. And questions in which the lawyers sought to explain scientific conclusions, even if allowed, likewise would be no substitute for an expert’s views. Further, the time and focus needed for such a voir dire would threaten to skew the trial completely, making it all about expert views and not about the sexual abuse charged in the indictment.
Except as indicated above, defendant’s motion is denied.

. Expert witnesses sometimes refer to a syndrome called Child Sexual Abuse Accommodation Syndrome. At least in this case, nothing turns on any differences between the syndromes.

. In the federal courts and most states a less rigorous standard governs in place of the Frye test. (See Daubert v Merrell Dow Pharmaceuticals, Inc., 509 US 579 [1993].)

. Rebecca Naeder, Note, “I Know My Client Would Never Hurt His Daughter, But How Can I Prove It?”: A Lawyer’s Guide to Defending Against Child Sexual Assault Accommodation Syndrome Evidence, 80 Brook L Rev 1153 (2015).

. It bears note that the author of the article apparently was a third-year law student, that she appears to agree with this court’s “sword” and “shield” understanding of current law, and that she is advising defense attorneys about how to attack CSAS testimony.