■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND GREEN-HAGEN, Appellant. — Judgment unanimously modified, on the law, and, as modified, affirmed, in accordance with the following memorandum: Defendant has been convicted of two counts of rape, first degree, two counts of sodomy, first degree, two counts of sexual abuse, first degree, and two counts of endangering the welfare of a child. The District Attorney correctly concedes that the counts of sexual abuse must be dismissed as lesser included offenses of the crimes of rape and sodomy and we therefore dismiss them (see *People v Jamison,* 62 AD2d 1042, and *People v Kalicki,* 49 AD2d 1032). Of the remaining issues raised in the briefs, only two require discussion; the court's receipt of evidence of an uncharged crime by defendant, elicited by the prosecution on redirect when rehabilitating one of its witnesses, and the court's rulings which permitted the prosecutor to use leading questions when examining infant witnesses. The crimes involve sexual offenses committed by defendant on his nine-year-old stepdaughter and 10-year-old stepson on September 5, 1977. They were reported

to the police two weeks later by the victims' older sister, Patricia. After police interrogation defendant made a partial confession which was reduced to writing and which he signed. He told the police that on September 5 he was in his bedroom moving furniture when the victims walked in, disrobed and proceeded to engage in sexual intercourse on his bed. He stated that he became aroused watching them and that when they finished he molested his stepdaughter. He denied that he had sexual intercourse with her or that he sodomized his stepson. At trial defendant repudiated the confession, denied the charges and contended that the complaint was a "frameup" conceived out of revenge by 15-year-old Patricia and the children because they did not like him. Defense counsel set forth this defense strategy in his opening remarks, describing Patricia as a "sexpot" who "advertised what she had" by walking around the house nude or seminude. He claimed that she had attempted to seduce defendant but that defendant had spurned her and that this, plus the fact that defendant enforced strict rules about her dating, precipitated the complaint. On cross-examination Patricia acknowledged that she disliked defendant because he was too strict and defense counsel pursued his strategy further by asking her about her pregnancy at the time of trial, suggesting that, in view of the pregnancy, strict dating rules were necessary. He also asked her whether she had run away from home and she acknowledged that she had. All of this was followed later by defendant's direct testimony which described Patricia's past scrapes with the law and with the school authorities for shoplifting and for truancy. Counsel's trial strategy generally and his cross-examination of Patricia in particular served two purposes: it tended to destroy the credibility of Patricia by showing her to be vindictive because her stepfather restricted her dating and, conversely, it sought to establish, at least inferentially, that defendant was a "good" father trying to control a 15-year-old stepdaughter who manifestly needed controlling. On redirect the prosecutor sought to rehabilitate Patricia by asking her why she did not like defendant and this exchange followed: "A. Because I never got to do anything and always had to stay in the house all the time to clean and that. Q. Any other reasons?" Defense counsel then interposed an objection which was overruled. "A. He tried to molest me." Mr. Panzarella (defense counsel): "What did you say?" "A. Because he tried to rape me." Defense counsel moved for a mistrial and the motion was denied. (Parenthetically, it may be added that defense counsel elicited testimony from Patricia during cross-examination that she had previously observed defendant sexually molesting her sister and brother, thus testifying before this exchange took place to incidents other than those contained in the indictment.) It is familiar law that evidence of prior uncharged crimes or bad acts may not be used to establish defendant's predisposition to commit the crime set forth in the indictment. The jury may not be permitted to infer guilt from the fact that because defendant sinned before he likely has sinned again *(People v Carmack,* 52 AD2d 264, 266, affd 44 NY2d 706; *People v Washington,* 32 AD2d 605 [an assault case in which the court stated that the evidence was offered to show that defendant was "an habitual groin kicker"]). Nevertheless, there are instances in which the prosecution may introduce evidence of uncharged crimes and it may be considered by the jury for limited purposes (see *People v Molineux,* 168 NY 264). If the admission of the evidence of defendant's prior act is to be sanctioned in this case, it must be on the theory that it was a proper response to issues raised by defense counsel during cross-examination. The purpose of redirect examination of a witness is to rehabilitate the witness by explaining, among other things, any testimony of the witness on cross-examination which may have affected her credibility (Fisch, New York Evidence [2d ed],§ 344). Defendant contends that this proof on redirect examination of Patricia did not serve to rehabilitate her, but that it only presented a different basis for her lack of credibility. He contends that the

prosecutor's questions did not tend to establish that Patricia did not like defendant, only that she disliked him for another reason than that revealed on cross-examination. When the testimony of Patricia on redirect examination as to prior uncharged sex crimes is considered in the context of the entire trial, it has a bearing on her credibility and as such is admissible in response to the cross-examination dealing with her reasons for disliking defendant. Defense counsel attempted to show that the witness was not credible because of her dislike of defendant for a reason that may fairly be characterized as frivolous or illegitimate and that she was a problem child and that defendant was a responsible father. Thus, defense counsel opened the door on the subject and in view of his trial strategy as revealed in his opening statement and the sweeping nature of his cross-examination, the prosecution was entitled to examine further as to the basis for Patricia's animosity toward her stepfather and to show that it had a legitimate basis (see *People v Buchanan,* 145 NY 1, 24-25; *People v Chandler,* 65 AD2d 920). The only other point requiring comment is the prosecutor's use of leading questions to examine the two victims. Both children had difficulty in relating the facts of the incident and in view of their age and the intimate and embarrassing nature of the crimes, the court did not abuse its discretion in permitting the prosecutor to use leading questions to examine them (see, generally, 65 NY Jur, Witnesses,§ 62, pp 223-224; 98 CJS,§ 332, p 46; 3 Wigmore, Evidence [Chadbourn rev],§ 779, and cases cited, p 170, n 3; Younger, Evidence Commentary, 44 Brooklyn L Rev 1119, 1123). (Appeal from judgment of Monroe County Court — rape, first degree, sodomy, first degree, and other charges.) Present — Simons, J. P., Hancock, Jr., Schnepp, Doerr and Moule, JJ.