People v Graham (2019 NY Slip Op 03246)





People v Graham


2019 NY Slip Op 03246


Decided on April 26, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 26, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, CURRAN, AND WINSLOW, JJ.


1450 KA 17-00608

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
CHARLES GRAHAM, ALSO KNOWN AS CHUCK GRAHAM, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (BRITTNEY CLARK OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KENNETH H. TYLER, JR., OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Anthony F. Aloi, J.), rendered August 26, 2016. The judgment convicted defendant, upon a jury verdict, of predatory sexual assault against a child (four counts), sexual abuse in the first degree and endangering the welfare of a child (four counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of, inter alia, four counts of predatory sexual assault against a child (Penal Law § 130.96) and one count of sexual abuse in the first degree (§ 130.65 [3]). We affirm.
Defendant failed to preserve for our review his contention that the evidence is legally insufficient to support the conviction inasmuch as his motion for a trial order of dismissal was not " specifically directed' " at the alleged deficiency in the proof raised on appeal (People v Hawkins, 11 NY3d 484, 492 [2008], quoting People v Gray, 86 NY2d 10, 19 [1995]). Nonetheless, this Court " necessarily review[s] the evidence adduced as to each of the elements of the crimes in the context of our review of defendant's challenge regarding the weight of the evidence' " (People v Stepney, 93 AD3d 1297, 1298 [4th Dept 2012], lv denied 19 NY3d 968 [2012]; see People v Danielson, 9 NY3d 342, 349 [2007]). Viewing the evidence in light of the elements of the crimes as charged to the jury (see Danielson, 9 NY3d at 349), we reject defendant's contention that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). "[R]esolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury" (People v Witherspoon, 66 AD3d 1456, 1457 [4th Dept 2009], lv denied 13 NY3d 942 [2010] [internal quotation marks omitted]), and we perceive no basis to disturb the jury's determinations.
We reject defendant's contention that he was deprived of effective assistance of counsel. Defendant contends that defense counsel failed to cross-examine the victim about her history of lying, but "attempting to attack the victim's credibility with . . . specific instance[s] of alleged untruthfulness [is] a tactic that is per se improper" (People v Drake, 138 AD3d 1396, 1397 [4th Dept 2016], lv denied 28 NY3d 929 [2016]), and defense counsel was not ineffective for failing to pursue a line of questioning that would have been prohibited (see People v Caban, 5 NY3d 143, 152 [2005]). Moreover, defense counsel elicited testimony from five other witnesses and defendant himself about the victim's reputation in the community for being untruthful (see People v Pavao, 59 NY2d 282, 290 [1983]), and defendant failed "to demonstrate the absence of strategic or other legitimate explanations for [defense] counsel's failure" to vigorously cross-examine the victim about collateral matters (People v Rivera, 71 NY2d 705, 709 [1988]; see also People v Carver, 27 NY3d 418, 420 [2016]). Specifically, the victim's testimony on direct [*2]examination was compelling and convincing, and defense counsel may have wanted to avoid the appearance of badgering a seven-year-old and thereby alienating the jury from his client.
Defendant further contends that defense counsel was ineffective for failing to correct on cross-examination the testimony of a detective about the results of DNA testing on items of clothing taken from defendant's trailer. We reject that contention. The People did not elicit any testimony from the detective on direct examination about the results of DNA testing and, on cross-examination, without referencing any particular laboratory report, defense counsel elicited testimony from the detective that the victim's DNA was not found on any clothing obtained from defendant's trailer, and that the DNA material that was found on defendant's clothing could have belonged to his new girlfriend. Thus, the detective's testimony regarding the DNA evidence was favorable to defendant and "there is no reasonable likelihood that the [alleged] error [by defense counsel] changed the outcome of the case' " (People v Sinclair, 90 AD3d 1518, 1518 [4th Dept 2011], lv denied 18 NY3d 962 [2012]). Furthermore, inasmuch as the People did not introduce testimony from the detective regarding any out-of-court statement, testimonial in nature, that accused defendant of anything, defendant's constitutional right to confront adverse witnesses was not violated by the detective's testimony (see generally Melendez-Diaz v Massachusetts, 557 US 305, 309-311 [2009]; People v John, 27 NY3d 294, 303-308 [2016]), and defense counsel was not ineffective for failing to object thereto.
We reject defendant's contention that counsel was ineffective for failing to lay a proper foundation for the admission in evidence of posts from the Facebook page of the victim's mother that contained sexually suggestive images and innuendo. Defense counsel attempted to introduce the Facebook posts under the theory that, if the victim had seen her mother's postings, those postings could have provided a source, other than defendant, for the child's knowledge of sexual matters, and the record establishes that the court excluded the Facebook posts on the ground that they were not relevant to the issues at trial, and not on the ground that the evidence lacked a proper foundation. Moreover, we conclude that the material was properly excluded on the ground that it was not relevant inasmuch as the Facebook posts did not depict or describe genitalia or sexual acts, and defendant's suggestion that they could have provided the victim with a basis of knowledge for her accusations against him is " too remote or speculative' " (People v Johnson, 109 AD3d 1187, 1188 [4th Dept 2013], lv denied 22 NY3d 1041 [2013]; see generally People v Carroll, 95 NY2d 375, 385 [2000]; People v Odom, 53 AD3d 1084, 1087 [4th Dept 2008], lv denied 11 NY3d 792 [2008]). Thus, inasmuch as the evidence was not excluded on the ground that it lacked a proper foundation, defense counsel was not ineffective for failing to lay a proper foundation for that evidence. Viewing the evidence, the law and the circumstances of the case in totality and as of the time of the representation, we conclude that defendant received meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]).
Defendant next contends that he was deprived of a fair trial by several improper evidentiary rulings by the court. We reject that contention. First, he contends that the court should not have allowed the doctor who examined the victim to testify about the elasticity of the vagina while explaining why young girls who have been sexually abused often have normal physical examinations. In response to defense counsel's objections that such testimony was not relevant, the court cautioned the jury that there was no allegation that defendant had penetrated the victim's vagina. We conclude that the court's prompt curative instruction to the jury provided an adequate remedy to alleviate any potential prejudice that was caused by the doctor's testimony (see People v Dean, 299 AD2d 892, 893 [4th Dept 2002], lv denied 99 NY2d 613 [2003]). Moreover, on summation, the prosecutor reiterated to the jury that there was no allegation that defendant had penetrated the victim's vagina and did not mention the doctor's testimony. Thus, we conclude that any error in allowing that testimony is harmless inasmuch as "the proof of defendant's guilt is overwhelming and there is no significant probability that the jury would have acquitted defendant had the error not occurred" (People v Williams, 25 NY3d 185, 194 [2015]; see People v Smith, 289 AD2d 960, 961 [4th Dept 2001], lv denied 97 NY2d 761 [2002]; see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
Defendant failed to preserve for our review his contention that the court improperly admitted in evidence the testimony of the People's expert witness concerning child sexual abuse accommodation syndrome (see People v Ennis, 107 AD3d 1617, 1618-1619 [4th Dept 2013], lv denied 22 NY3d 1040 [2013], reconsideration denied 23 NY3d 1036 [2014]). In any event, the court did not abuse its discretion in permitting the expert's testimony "for the purpose of [*3]explaining behavior that might be puzzling to a jury" (People v Spicola, 16 NY3d 441, 465 [2011], cert denied 565 US 942 [2011]) inasmuch as the testimony was "general in nature and [did] not constitute an opinion that [the] particular alleged victim [was] credible or that the charged crimes in fact occurred" (Drake, 138 AD3d at 1398; see People v Diaz, 20 NY3d 569, 575-576 [2013]; cf. People v Ruiz, 159 AD3d 1375, 1376 [4th Dept 2018]).
Contrary to defendant's further contention, the court did not abuse its discretion in allowing the prosecutor to ask leading questions of the child victim in this sexual abuse case (see People v Boyd, 50 AD3d 1578, 1578 [4th Dept 2008], lv denied 11 NY3d 785 [2008]; People v Greenhagen, 78 AD2d 964, 966 [4th Dept 1980], lv denied 52 NY2d 833 [1980]). Additionally, even assuming, arguendo, that, as defendant contends, two of the questions asked of the People's expert witness on direct examination were leading questions, "the decision whether to permit the use of leading questions on direct examination is a matter within the sound discretion of the trial court and will not be disturbed absent a clear demonstration of an abuse of discretion' " (People v Martina, 48 AD3d 1271, 1272 [4th Dept 2008], lv denied 10 NY3d 961 [2008]; see Jerome Prince, Richardson on Evidence § 6-232 [Farrell 11th ed 1995]), and we perceive no abuse of discretion here.
Defendant next contends that he was deprived of a fair trial by instances of misconduct by the prosecutor. Contrary to defendant's contention, "[i]nasmuch as defendant's testimony during both direct and cross-examination clearly suggested that the People's witnesses had fabricated their testimony, it was not improper for the prosecutor to ask him whether be believed the People's witnesses had lied during their testimony" (People v Head, 90 AD3d 1157, 1158 [3d Dept 2011]; see People v Buel, 53 AD3d 930, 932 [3d Dept 2008]; People v Allen, 13 AD3d 892, 897 [3d Dept 2004], lv denied 4 NY3d 833 [2005]).
Defendant did not preserve for our review his contention that the prosecutor made improper comments during summation (see People v Reyes, 144 AD3d 1683, 1686 [4th Dept 2016]; People v Lewis, 140 AD3d 1593, 1595 [4th Dept 2016], lv denied 28 NY3d 1029 [2016]). In any event, evaluating the prosecutor's comments on summation "in light of the defense summation" (People v Halm, 81 NY2d 819, 821 [1993]), we conclude that the prosecutor's comments "constituted fair comment on the evidence . . . as well as fair response to the summation of defense counsel" (People v Jackson, 141 AD3d 1095, 1096 [4th Dept 2016], lv denied 28 NY3d 1146 [2017]).
Defendant also failed to preserve for our review his contention that the prosecutor disregarded a court ruling by questioning the detective about defendant's attempt to commit suicide. At trial, the prosecutor asked the detective to describe defendant's demeanor at the end of the interview, and the detective answered that defendant became violent at the end of the interview and "wanted to harm himself." Defense counsel objected "to anything beyond that line" and the court obliged, prohibiting the prosecutor from asking "anything beyond that." Inasmuch as the court granted the relief requested by defendant and he did not seek further relief, such as striking from the record the prosecutor's question and the detective's answer or a curative instruction, defendant's contention is unpreserved for our review (see People v Goley, 113 AD3d 1083, 1084 [4th Dept 2014]). We note in any event that, although the court ruled at the Huntley hearing that the People would not be permitted to play for the jury that portion of a video recording of the interview in which defendant attempted to take his own life, the court indicated that it would not preclude the People from eliciting testimony from the detective regarding her observations of defendant. Thus, the record establishes that the prosecutor did not disregard a prior court ruling and did not exceed the bounds of legitimate advocacy (cf. People v Rosa, 108 AD2d 531, 539 [1st Dept 1985]). Defense counsel was therefore not ineffective for failing to object to the alleged instances of prosecutorial misconduct (see generally People v Lowery, 158 AD3d 1179, 1180 [4th Dept 2018], lv denied 31 NY3d 1119 [2018]; People v Black, 137 AD3d 1679, 1681 [4th Dept 2016], lv denied 27 NY3d 1128 [2016], reconsideration denied 28 NY3d 1026 [2016]).
Finally, the sentence is not unduly harsh or severe.
Entered: April 26, 2019
Mark W. Bennett
Clerk of the Court